**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| FIELDTURF USA, INC.<br>5211 Mitchell Bridge Road<br>Dalton, Georgia 30721 | CASE NO.: |
| -and- | JUDGE: |
| FIELDTURF TARKETT INC.<br>8088 Montview Road<br>Town of Mont Royal Quebec<br>Canada, H4P2L7 | |
| Plaintiffs, | <u>COMPLAINT</u><br>(Patent Infringement) |
| v. | |
| SPORTS CONSTRUCTION GROUP, LLC<br>1406 West Sixth Street<br>Suite 200<br>Cleveland, Ohio 44113 | |
| -and- | JURY DEMAND ENDORSED HEREON |
| PAUL FRANKS<br>1406 West Sixth Street<br>Suite 200<br>Cleveland, Ohio 44113 | |
| Defendants. | |

The Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett Inc. (collectively referred to herein as "FieldTurf"), for their complaint against the Defendants, Sports Construction Group, LLC and Paul Franks (referred to herein as "Defendants"), state as follows:

## THE PARTIES AND NATURE OF ACTION

1. FieldTurf USA, Inc. is a Florida corporation, with its principal place of business in Dalton, Georgia. FieldTurf USA, Inc. manufactures, sells, and installs synthetic turf products throughout the United States.

2. FieldTurf Tarkett Inc. is a Canadian company with its principal place of business in Montreal, Quebec, Canada. FieldTurf Tarkett Inc. designs synthetic turf products and distributes these products worldwide.

3. FieldTurf Tarkett Inc. is the owner by assignment of all right, title, and interest in U.S. Patent No. 6,551,689, entitled "Synthetic Grass With Resilient Granular Top Surface Layer" issued on April 22, 2003 by the U.S. Patent and Trademark Office ("the '689 patent"). A true and correct copy of the '689 patent is attached hereto as Exhibit A.

4. FieldTurf Tarkett Inc. is the owner by assignment of all right, title, and interest in U.S. Patent No. 6,746,752, entitled "Synthetic Grass With Resilient Granular Top Surface Layer" issued on June 8, 2004 by the U.S. Patent and Trademark Office ("the '752 patent"). A true and correct copy of the '752 patent is attached hereto as Exhibit B.

5. FieldTurf USA, Inc. is the exclusive licensee from FieldTurf Tarkett Inc. under the '689 and '752 patents for the right to manufacture, sell, offer to sell, and install synthetic turf products in the United States.

6. On information and belief, Defendant Sports Construction Group (hereinafter "SCG") is an Ohio corporation for profit having a principal place of business at 1406 West Sixth Street, Suite 200, Cleveland, Ohio 44113. On information and belief, SCG designs, markets, distributes, sells, and/or installs synthetic turf products throughout the United States, including to customers within this judicial district.

7. On information and belief, Defendant Paul Franks (hereinafter referred to as "Mr. Franks") is: (a) an individual resident in the Northern District of Ohio; (b) the president of SCG; (c) the central figure in the corporation; and (d) actively involved in virtually all aspects of SCG's business.

8. On information and belief, SCG, under the control of Mr. Franks, sells and/or installs synthetic turf products, usually through the submission of bids.

9. On information and belief, SCG, under the active participation by Mr. Franks, has offered to sell and sold synthetic turf products to Concord University in Athens, West Virginia, and/or installed same.

10. On information and belief, Mr. Franks authorized and personally directed the installation of synthetic turf products to Concord University.

11. All of the Counts set forth in this Complaint arise out of Defendants' unlawful and infringing installation of synthetic turf product at, among others, Concord University, as well as, on information and belief, its infringing offers to sell same.

## JURISDICATION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal question), and 28 U.S.C. §1338(a) (arising under the patent laws of the United States, 35 U.S.C. §§101 et seq.). Jurisdiction is also proper pursuant to 28 U.S.C. § 1332, inasmuch as Plaintiffs and Defendants are residents of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13. This Court may exercise personal jurisdiction over SCG because it is incorporated in Ohio and has a principal place of business in the State of Ohio.

14. This Court may exercise personal jurisdiction over Mr. Franks because he is an individual residing in the State of Ohio.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c), since: Defendants have their principal place of business within this district where they willfully solicit and conduct business; and (b) Defendants are subject to personal jurisdiction here. Venue is also proper pursuant to 28 U.S.C. §1400(b) inasmuch as this is a civil action for patent infringement; Defendants reside in this judicial district; and Defendants have a regular and established place of business in the State of Ohio.

## HISTORY OF SYNTHETIC GRASS

16. Synthetic grass surfaces, also known generically as "artificial turf," are widely used on playing fields for a variety of sporting activities, including soccer and football. Synthetic grass surfaces are designed to duplicate and improve upon the properties of natural grass surfaces while providing better durability, reducing the maintenance costs, and allowing for more intensive use of the playing field.

17. The first synthetic grass surfaces were installed in university and professional stadiums in 1966. Since these early installations, it has become clear that some types of synthetic surfaces may result in injuries to players. These surfaces can be so hard that they do not provide enough shock absorbency; over time the weave of the fibers may cause a player's cleats to lock in the synthetic surface and cause a severe knee or ankle injury; and, abrasiveness of the fibers may cause skin burns. Because of these problems, owners and operators of sports fields have sought safer synthetic grass surfaces. In response, the industry, and more particularly FieldTurf, has focused on developing synthetic surfaces that are more like natural grass in that the blades are longer and are held up by an infill material that includes resilient granules.

## FIELDTURF'S SYNTHETIC GRASS

18.     After extensive research and development, FieldTurf's predecessor-in-interest began offering a synthetic grass surface in 1993.  The current FieldTurf product provides a resilient and forgiving playing surface due to its many innovations, including its ribbon row design and layered sand and rubber infill system ("the FieldTurf product").  Many of these innovations are covered by patents.  The artificial blades of grass are attached to a woven backing layer and protrude upward.  The blades are typically supported by a layered infill system consisting of, for example, a bottom layer of sand, a middle layer of mixed sand and rubber particles, and a top layer of rubber particles.  The sand and rubber used in the infill system are premium materials, including rounded silica sand and cryogenically ground rubber.  By using these materials, in these formations, the FieldTurf product is safer than the earlier types of synthetic surfaces, reacts more like natural grass, and is playable even in extremely wet conditions.  The FieldTurf product has been very successful in the marketplace.  Once players, owners, and others experience playing on the FieldTurf product, they believe that it is superior to other synthetic turf products.  Major customers of the FieldTurf product include National Football League teams, such as the Oakland Raiders, Minnesota Vikings, Cincinnati Bengals, Indianapolis Colts, Seattle Seahawks, Pittsburgh Steelers, and New York Jets, and colleges, such as the University of Washington, University of Nebraska, San Diego State University, to name a few.

19.     Two particular FieldTurf patents, the '689 and '752 patents, both generally disclose and claim, among other things, a synthetic grass structure, comprising a pile fabric with a flexible sheet backing and a plurality of upstanding synthetic ribbons extending upwardly from an upper surface of the backing.  An infill layer of particulate material is disposed interstitially

between the upstanding ribbons upon the upper surface of the backing. The infill comprises a bottom course of intermixed hard and resilient granules disposed upon the top surface of the backing, and, a top course of resilient granules disposed upon the bottom course.

### SCG INSTALLS INFRINGING FIELD AT CONCORD UNIVERSITY

20. On information and belief, Mr. Franks is well aware of FieldTurf's '689 and/or '752 patents. Mr. Franks, through SCG, has acted as a general contractor, wherein FieldTurf's products have been used, and has been made aware of its patents.

21. On information and belief, SCG, acting through, and/or pursuant to Mr. Franks' directions and authorization, installed and/or had installed a synthetic turf athletic playing field at Concord University in Athens, West Virginia.

22. On information and belief, the synthetic turf field installed at Concord University consists of a synthetic grass assembly comprising a pile fabric with a flexible sheet backing and a plurality of upstanding synthetic ribbons with an infill material disposed interstitially between the ribbons, and, the infill structure comprises a bottom course of intermixed hard and resilient granules disposed upon the top surface of the backing, and, a top course of resilient granules disposed upon the bottom course.

23. On information and belief, Mr. Franks personally took part in or personally directed, or actively and knowingly caused SGC to install the synthetic turf field at Concord University.

### COUNT I
(Infringement of U.S. Patent No. 6,551,689)

24. FieldTurf repeats and incorporates by reference the allegations of paragraphs 1 through 23 above as if fully set forth herein.

25. Based at least on the actions set forth herein above, SCG has infringed the '689 patent, specifically by offering to sell, selling, installing and for making an infringing artificial turf product for the synthetic turf field at Concord University in violation of 35 U.S.C. §271.

26. FieldTurf is informed and believes Mr. Franks personally took part in or personally directed, or actively and knowingly aided and abetted SCG's infringement. Mr. Franks authorized and approved the installation of the synthetic turf field at Concord University in a manner that infringed FieldTurf's '689 patent.

27. As a result of Defendants' acts of infringement, FieldTurf has sustained and will continue to sustain economic damages. FieldTurf is entitled to recover its damages from Defendants pursuant to 35 U.S.C. §284.

## COUNT II
(Infringement of U.S. Patent No. 6,746,752)

28. FieldTurf repeats and incorporates by reference the allegations of paragraphs 1 through 27 above as if fully set forth herein.

29. Based at least on the actions set forth herein above, SCG has infringed the '752 patent, specifically by offering to sell, selling, installing and for making an infringing artificial turf product for the synthetic turf field at Concord University in violation of 35 U.S.C. §271.

30. FieldTurf is informed and believes Mr. Franks personally took part in or personally directed, or actively and knowingly aided and abetted SCG's infringement. Mr. Franks authorized and approved the installation of the synthetic turf field at Concord University in a manner that infringed FieldTurf's '752 patent.

31. As a result of Defendants' acts of infringement, FieldTurf has sustained and will continue to sustain economic damages. FieldTurf is entitled to recover its damages from Defendants pursuant to 35 U.S.C. §284.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs, FieldTurf, demand a judgment in their favor and against the Defendants, Sports Construction Group and Paul Franks, and request that this Court:

A.  Order, adjudge and decree that Defendants have infringed the '689 and '752 patents;

B.  Issue a preliminary and permanent injunction prohibiting Defendants and all of their representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with it, from infringing any claims of the '689 and '752 patents, including, but not limited to, further infringement by offering to sell, selling, installing, and/or directing the installation of any turf product that infringes any claim of the '689 and '752 patents.

C.  Award damages for infringement of the '689 and '752 patents, including, but not limited to, FieldTurf's lost profits as a result of Defendants' infringement;

D.  Award costs for suit; and,

E.  Provide any further relief as this Court may deem equitable and proper, including but not limited to trebling of damages and payment of FieldTurf's attorneys' fees as a result of Defendants' willful conduct.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable to a jury.

Respectfully submitted,

Co-Counsel:

| | |
|---|---|
| Jody L. Factor | /s/ H. Alan Rothenbuecher |
| Nicholas S. Lee | H. Alan Rothenbuecher (0041883) |
| FACTOR & LAKE, LTD. | Jay E. Krasovec (0069787) |
| 1327 W. Washington Blvd. | Schottenstein, Zox & Dunn Co., LPA |
| Suite 5G/H | US Bank Centre at Playhouse Square |
| Chicago, IL 60607 | 1350 Euclid Avenue, Suite 1400 |
| (312) 226-1818 Telephone | Cleveland, OH  44115 |
| (312) 226-1919 Facsimile | Phone: (216) 621-6501 |
| | Facsimile: (216) 621-6502 |

*Attorneys for Plaintiff*
*FieldTurf USA, Inc. and*
*FieldTurf Tarkett Inc.*