**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FieldTurf USA, Inc.,** *et al.*, | ) | **CASE NO. 1:06 CV 2624** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Sports Construction Group, LLC,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiffs' Motion to Dismiss for Lack of Subject

Matter Jurisdiction.  (Doc. 50)  This is a patent infringement case in which plaintiffs have

alleged defendants infringe certain claims of U.S. Patent No. 6,551,689 and U.S. Patent No.

6,746,752, directed to synthetic grass.  Plaintiffs' Motion requests that defendant Sports

Construction Group, LLC's Counterclaims 1 and 7 for declaratory judgment relief be dismissed.

For the reasons that follow, the Motion is DENIED.

**FACTS**

Plaintiffs, FieldTurf USA, Inc., as exclusive licensee of the patent rights at issue, and

1

FieldTurf Tarkett Inc., as owner and licensor of the patent rights at issue (collectively "FieldTurf" or "plaintiffs"), brought this action against defendants, Sports Construction Group, LLC ("SCG" or "defendant") and Mr. Paul Franks, alleging infringement of certain claims of U.S. Patent No. 6,551,689 ("the '689 Patent") and U.S. Patent No. 6,746,752 ("the '752 Patent"). Defendant SCG answered and asserted seven counterclaims, including a request for a declaration that defendant does not infringe the '689 Patent (Counterclaim 1) and a declaration that the '689 Patent is invalid for failure to comply with the Patent Act, 35 U.S.C. § 101, *et seq.* (Counterclaim 7).

Plaintiffs voluntarily dismissed Count 1 of the Complaint, alleging infringement of the '689 Patent, without prejudice.  (Doc. 53)  All claims against defendant Paul Franks, President of SCG, were also dismissed without prejudice, by stipulation of the parties.  (Doc. 26)  In addition, on May 18, 2007, plaintiffs provided defendant with a written covenant not to sue.

Both the '689 Patent and the '752 Patent are entitled "Synthetic Grass with Resilient Granular Top Surface Layer."  The patents are generally directed to a synthetic grass assembly comprising a pile fabric with a flexible sheet backing, rows of upstanding synthetic ribbons, and an infill layer between the ribbons.  In their Complaint, plaintiffs allege that SCG has offered to sell and installed infringing products at Concord University in Athens, West Virginia and other locations.  In response, SCG admits that it sells and installs synthetic turf products throughout the United States.

Plaintiffs now move this Court to dismiss defendant's Counterclaims 1 and 7 on the grounds that the voluntary dismissal of plaintiffs' Count 1 together with the covenant not to sue have served to eliminate any actual case or controversy between the parties as to the '689 Patent

and thus deprive the Court of subject matter jurisdiction over Counterclaims 1 and 7.  Defendant

opposes the Motion.

### STANDARD OF REVIEW

When a district court's subject matter jurisdiction is challenged under Rule 12(b)(1) of

the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of

proof.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v.*

*Stratton*, 798 F.2d 913, 915 (6th Cir. 1986); *Int'l Medical Prosthetics Res. Assoc., Inc. v. Gore*

*Enterprise Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986).  There must be an actual

controversy, not only at the time the complaint is filed, but at all stages of the litigation.  *Preiser*

*v. Newkirk*, 422 U.S. 395, 401 (1975).

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency

of the jurisdictional allegations in the complaint.  *Id.*  Thus, those allegations must be taken as

true and construed in the light most favorable to the nonmoving party.  *Id.*  Factual attacks,

however, challenge the actual fact of the court's jurisdiction.  *Id.*  In such cases, the court is free

to weigh any evidence properly before it to satisfy itself as to the existence of its power to hear

the case.  *Id.*; *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.

1990).

### DISCUSSION

Both parties recognize that central to plaintiffs' factual challenge to this Court's subject

matter jurisdiction over defendant's Counterclaims 1 and 7 is whether or not plaintiffs' covenant

not to sue is sufficiently unconditional such as to eliminate any case or controversy between the

parties as to the '689 Patent.

Plaintiffs represent that they will not bring any future legal action against SCG for infringement of the '689 Patent for any "current or past actions associated with the making, using, selling or offering to sell a synthetic turf field at Concord University."  (Doc. 51 at 2)[1] Particular emphasis is placed on the fact that, to date, plaintiffs' specific allegations of infringement have been limited to defendant's installation at Concord University.  *Id.*  Plaintiffs also represent that they delivered a written "covenant not to sue" to defendant on or about May 18, 2007.  Plaintiffs argue that its covenant not to sue is unconditional such that this Court is divested of subject matter jurisdiction over defendant's declaratory judgment counterclaims. The Court notes that it has not been provided the May 18 letter or the contents of it.  However, the contents can be inferred from defendant's May 23, 2007 response, which was provided to the Court with plaintiffs' reply in support of this Motion.

Defendant's response indicates that the written covenant not to sue is deficient in several respects.  The alleged deficiencies relevant to this Motion are that: the dismissal of plaintiffs' claim for infringement of the '689 Patent was without prejudice; plaintiffs' covenant not to sue did not include a promise not to sue for "installation" of defendant's synthetic grass product; the

---

[1]      The Court notes that plaintiffs alternately represent in their Motion that the covenant not to sue is:  (a) limited to "current or past" actions by defendant at Concord University and (b) that it extends to all "past, present, and future acts" by defendant at Concord University. (compare Doc. 51 at 2 with Doc. 51 at 8 and Doc. 62 at 4)  Whether plaintiffs have given up the right to sue for all acts (past, present, and future) with regards to the Concord University installation, as opposed to merely giving up the right to sue for past and present acts at Concord University, does not affect the Court's ruling on the matter, as discussed below.

4

covenant did not adequately define the differences between defendant's commercial product, containing "monofilament fibre", and the "slit film" of the '689 Patent; and plaintiffs' promise did not extend to all completed past uses, sales, offers of sale, and installations of defendant's monofilament fibre turf other than at Concord University.

Whether this Court has subject matter jurisdiction over defendant's counterclaims is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201, and interpretive case law.  The Declaratory Judgment Act provides in relevant part that a district court may exercise subject matter jurisdiction as follows:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

The Declaratory Judgment Act confers subject matter jurisdiction when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007) (quoting *Maryland Casualty Co. V. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, at 771 (internal quotations omitted).  *MedImmune* criticized the Federal Circuit's practice of applying a two-part "reasonable apprehension of suit" (or

5

"reasonable apprehension of imminent suit") test to declaratory judgment actions in the patent context, stating it was at odds with Supreme Court precedent.  *MedImmune*, at 774, n.11.

Where declaratory judgment jurisdiction is established, the district court has discretion in deciding whether or not to exercise that jurisdiction.  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007).  However, there are boundaries to that discretion.  *Id.* "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal."  *Id.*  "Furthermore, the exercise of discretion must be supported by a sound basis for refusing to adjudicate an actual controversy."  *Id.*

While many decisions have been issued on the extent to which a promise not to sue will divest a court of subject matter jurisdiction over a claim of patent invalidity or non-infringement, only a few are dated after the *MedImmune* decision.  Those cases that pre-date *MedImmune* establish that an unconditional covenant not to sue, made by the declaratory judgment defendant, will divest the court of subject matter jurisdiction, as the case or controversy between the parties will have been eliminated.  *See, e.g.*, *Super Sack Mfr. Corp. V. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) (patentee promised to never sue for infringement based on any product currently made or sold by accused infringer).  However, a *conditional* promise not to sue is insufficient to eliminate an otherwise live controversy between the parties.  *See, e.g.*, *Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361 (Fed. Cir. 2004) (a narrow promise not to sue for one particular past use of an allegedly infringing product was insufficient to strip the court of jurisdiction over the declaratory judgment claims for invalidity or non-infringement).

6

In *Sierra*, the defendant patentee sent a letter to the declaratory judgment plaintiff informing it of one of defendant's patents stating that plaintiff's power supply equipment was infringing on the claims of that patent.  Communications between the parties continued sporadically for several years.  Plaintiff admitted that it did manufacture and sell certain power supply equipment that presumably fell within defendant's definition of infringing conduct but stated that it had ceased making and selling that particular product.  Defendant responded several years later that it believed plaintiff was infringing three more patents and that it intended to vigorously defend its patent rights.  Plaintiff eventually filed a complaint seeking a declaratory judgment that one of defendant's patents directed to power supplies was invalid or not infringed.  Defendant countered with claims of infringement.

After discovery into plaintiff's allegedly infringing activities, defendant moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that plaintiff was not currently manufacturing or selling any power supplies arguably covered by defendant's patents.  Plaintiff asserted that it had made and sold such power supplies in the past, as it had already admitted in its pre-litigation correspondence with defendant, and that it continued to use such power supplies, the "2 kW" supply, for in-house testing and product development.  During oral argument on the motion to dismiss, defendant's counsel made a promise on the record that defendant would not sue plaintiff for infringement that occurred from its in-house use of the offending power supply.  While the district court found it had no subject matter jurisdiction over the complaint, the Federal Circuit disagreed and reversed.  With respect to the covenant not to sue, the Federal Circuit stated:

> [The patentee/defendant's] promise as to <u>in-house use</u> of the 2 kW
> power supply, however, does not vitiate the reasonable apprehension

> of suit for other potentially infringing activities, such as [the declaratory judgment plaintiff's] <u>manufacturing and sale</u> of the 2 kW power supply.  The broad accusations of the 1999 and 2000 letters embraced all potentially infringing activities, but [defendant's] narrow promise was limited to in-house use.  By not making a promise not to sue of a breadth equal to its earlier threats, [defendant] failed to eliminate completely the reasonable apprehension of suit with regard to potentially infringing activities other than in-house use.  The district court erred by holding that [plaintiff] lacked a reasonable apprehension of suit with respect to the 2 kW supply.

*Sierra*, at 1375 (emphases in original).  While this Court acknowledges that *Sierra* was decided under the now defunct two-part "reasonable apprehension of suit" test, the *Sierra* decision is nonetheless instructive in analyzing the factually analogous situation of the present case.[2]

FieldTurf directs the Court to one opinion rendered since *MedImmune* that ostensibly deals with a covenant not to sue.[3]  In *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372

---

[2]

The Court notes that the *Sierra* opinion does recite the correct standard, which had been articulated in United States Supreme Court cases pre-dating *MedImmune*, namely that "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" and that there must be a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Sierra*, at 1372.  However, the *Sierra* court then went on to explain that the Federal Circuit had "developed a two-part test to guide the case-or-controversy analysis in patent-based declaratory judgment suits." *Id.* at 1372-73.  It is this two-part test the Supreme Court has since criticized.

[3]

The parties dispute whether or not *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 2007 U.S. Dist. LEXIS 7383 (Fed. Cir. March 30, 2007), is applicable to the present dispute.  In as much as *Teva* did not involve a promise not to sue, the Court finds *Teva* is not controlling.

8

(Fed. Cir. 2007), the parties attempted to negotiate a cross-licensing agreement.  During those negotiations, patentee/defendant presented a detailed analysis of the declaratory judgment plaintiff's allegedly infringing activities.  However, defendant also stated during negotiations that it did not "intend" to sue plaintiff for infringement.  When negotiations failed, plaintiff filed a declaratory judgment action seeking a judgment that defendant's patents, discussed during the negotiations, were invalid or not infringed.

The Federal Circuit found that such a statement of no present intent to sue was insufficient to eliminate the controversy between the parties and held that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise."  *SanDisk*, at 1381-82; *see also Benitec Australia, Ltd. v. Nucleonics, Inc.*, 2007 U.S. App. LEXIS 17299, *19 (Fed. Cir. July 20, 2007) (explaining that the lack of present intent to sue in *SanDisk* was not a promise not to sue in the future); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983) (a statement of no present intention to sue is not promise to never sue; therefore, the court had jurisdiction over the declaratory judgment action).  *SanDisk* is not helpful in that *SanDisk* did not involve an enforceable promise not to sue; it involved merely a statement of no present intention to sue.

The plaintiffs also direct the Court to *Prasco, LLC v. Medicis Pharm. Corp.*, 2007 U.S. Dist. LEXIS 48302 (S.D. Ohio July 3, 2007).  In *Prasco*, plaintiff filed a declaratory judgment action, requesting a decision on whether one of its products infringed four of defendant's patents. In support of its argument that the court had subject matter jurisdiction over the case, plaintiff stated that the defendant had previously sued it for patent infringement; however, that previous

suit involved a different patent and a different allegedly infringing product.  The plaintiff did not

allege that the two products or patents were related.  Accordingly, the court stated it could not

conclude there was a live controversy between the parties.  This Court finds that *Prasco* is not

helpful in that it did not involve a promise not to sue.  Further, because the previous litigation

between the parties in *Prasco* involved different patents and products, there was no indication

that the patentee might sue for infringement.

In *Benitec*, on the other hand, which was decided after *MedImmune*, the patentee did

make an unconditional promise not to sue.  The patentee had sued defendant for patent

infringement.  Plaintiff later voluntarily dismissed its complaint without prejudice.  Further, the

plaintiff promised not to sue defendant for *any* activities of or products commercialized by

defendant as of the date the complaint for infringement was dismissed.

The *Benitec* court noted:

> A useful question to ask in determining whether an actual
> controversy exists is what, if any, cause of action the declaratory
> judgment defendant may have against the declaratory judgment
> plaintiff:
> The concepts of 'adverse legal rights' and 'legal risk,' used in
> [prior] cases to describe the standard for jurisdiction require that
> there be an underlying legal cause of action that the declaratory
> defendant could have brought or threatened to bring, if not for the
> fact that the declaratory plaintiff has preempted it. Without an
> underlying legal cause of action, any adverse economic interest
> that the declaratory plaintiff may have against the declaratory
> defendant is not a legally cognizable interest sufficient to confer
> declaratory judgment jurisdiction.

*Benitec*, at *8-9.  Because the plaintiff gave up its right to sue defendant for all past and present

activity, and because plaintiff conceded that defendant had not yet infringed its patents and could

not for years (because defendant's products were still in development), the court found there was

10

no actual controversy between the parties.  The *Benitec* decision is distinguishable from the instant action in that the promise not to sue was unconditional, and the declaratory judgment plaintiff did not engage in any potentially infringing activities such as offering to sell or selling a commercial product.

In applying the above case law to the present dispute, the Court first notes that plaintiffs are correct in that they are estopped, as a result of their promise on the record, from re-filing suit against SCG for infringement of the '689 Patent *for actions at the Concord University site*, even though the dismissal of Count 1 of the Complaint was without prejudice.  However, this estoppel does not eliminate the controversy between the parties, as plaintiffs would have the Court believe.  Plaintiffs allege in their Complaint that SCG has offered to sell and installed infringing products at locations other than Concord University, and SCG has admitted that it sells and installs synthetic turf products throughout the United States.  Moreover, as defendant pointed out in its May 23, 2007 letter to plaintiffs, plaintiffs' promise not to sue does not extend to completed past uses, sales, offers of sale, and installations of defendant's monofilament fibre turf.  This narrow promise not to sue and the resulting estoppel do not preclude plaintiffs from re-filing suit with respect to defendant's offers for sale, sales, and installations at locations other than Concord University.  Notably, such a possibility of suit was considered by the *Benitec* court in determining whether any controversy existed.  *Benitec*, at *8-9 ("A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff").  Here, FieldTurf has maintained its right to institute an infringement cause of action against SCG for its offers to sell, sales, or installations at locations other than at Concord University.  As a result, the Court finds

11

that FieldTurf's covenant not to sue is not sufficiently unconditional as to eliminate the controversy between the parties.

There still exists a "real and substantial" dispute between FieldTurf and SCG as to whether SCG infringed the '689 Patent and whether the '689 Patent is invalid.  Such contentions amount to a "definite and concrete [dispute], touching the legal relations of [these] parties having adverse legal interests."  Accordingly, this Court has subject matter jurisdiction over defendant's Counterclaims 1 and 7.

**CONCLUSION**

For the foregoing reasons, the plaintiffs' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan                              
PATRICIA A. GAUGHAN
United States District Judge

Dated: 8/14/07

12