**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FIELDTURF USA, INC., ET AL. | ) | |
| | ) | CASE NO.: 1:06CV2624 |
| Plaintiffs, | ) | |
| | ) | Judge Patricia A. Gaughan |
| v. | ) | |
| | ) | **FIELDTURF'S COMBINED** |
| SPORTS CONSTRUCTION GROUP, | ) | **MOTION & MEMORANDUM IN** |
| LLC, ET AL. | ) | **SUPPORT OF DEFAULT** |
| | ) | **JUDGMENT AGAINST THE** |
| Defendants. | ) | **DEFENDANT SPORTS** |
| | ) | **CONSTRUCTION GROUP, LLC., IN** |
| | ) | **THE ALTERNATIVE, FOR** |
| | ) | **DISQUALIFICATION OF** |
| | ) | **COUNSEL** |

I.    INTRODUCTION

Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett Inc. (collectively "FieldTurf"), move this Court for an order of default judgment against Defendant Sports Construction Group, LLC ("SCG") and for a dismissal of SCG's counterclaims with prejudice.  In the event this Court does not find default judgment and dismissal appropriate, FieldTurf moves in the alternative for an order disqualifying attorney Ron Lasko and the law firm of Lasko & Lind from representation of SCG in this case.

For the first time since the case was filed in October of 2006, counsel for SCG, Ron Lasko divulged that he has an 8% ownership interest in the Defendant SCG.  As this Court will recall, the disclosure was made upon inquiry by the Court at the status hearing held on September 6, 2007.

The fact that Mr. Lasko is an owner of SCG is a serious problem.  FieldTurf in reliance on the Protective Order entered by this Court (Doc. No. 44) has produced highly sensitive confidential, proprietary and trade secret information to Mr. Lasko and his firm Lasko & Lind believing that they were "outside counsel" as required by the Order to qualify for receiving information under the restriction of "attorney's eyes only."   A lawyer-owner of a defendant company which is a potential competitor, is not "outside counsel" under the letter or spirit of the Order.  Had FieldTurf been made aware of Mr. Lasko's ownership interest, it would have taken

all steps available to it to preclude any of its highly sensitive information from ever being reviewed and/or analyzed by Mr. Lasko or his firm.

Since learning of Mr. Lasko's ownership interest in SCG, FieldTurf has looked back at the events that unfolded in discovery and has found that it appears to be no accident that Mr. Lasko's equity or pecuniary stake in the defendant was unknown for so long.  As detailed in §II below, the evidence shows that Mr. Lasko and his firm have actively and persistently avoided disclosure of this information for the purpose of having Mr. Lasko's input to SCG of the information produced even at the highest levels of the Protective Order.

However, as detailed in §II, in accomplishing this goal, one or more of SCG in the guise of one its owners Mr. Lasko, Mr. Lasko individually and/or Mr. Lasko's firm have:

- by demanding and receiving attorney's eyes only information in discovery in this case deceitfully misrepresented to FieldTurf and the Court that the Lasko firm and Mr. Lasko qualified as "outside counsel" under the Protective Order;

- conducted discovery abuses by stonewalling, breaking promises for production, and otherwise artificially refusing to produce discovery pending since January 2007 seeking SCG's corporate structure and ownership – thus successfully hiding the truth and perpetuating the on-going deception;

- violated the Protective Order in this case;

- violated a protective order in a parallel Ohio State Court case by demanding and receiving FieldTurf attorney's eyes only information in that case with out disclosing that Mr. Lasko is an owner of SCG which is expressly forbidden by the order in that case;

- obtained FieldTurf trade secret information by improper means i.e. trade secret misappropriation;

- traded off the level of candor expected of an officer of this Court for the level expected of an officer of SCG; and,

- since the time when the Court essentially compelled Mr. Lasko's disclosure of an interest, have failed to even attempt to mitigate the harm caused by their violations of discovery rules and court orders,  deceptions, abuse of discovery, misappropriations.

Based upon this conduct, FieldTurf requests that this Court remedy the above misconduct and the harm caused thereby by sanctioning SCG, Mr. Lasko and his firm:

1. in granting an order for default judgment against SCG and dismissing its counterclaims under Rule 37 for willful and repeated violations of protective orders and discovery abuse (*see* §III(B)(1);

2. in granting an order in the alternative for disqualification of Mr. Lasko and the Lasko firm under Rule 37 for repeated violations of protective orders and discovery abuse (*see* §III(B)(2);

3. in granting an order in the alternative for disqualification for violations by Mr. Lasko and the Lasko firm of the Ohio Code of Professional Responsibility DR 1-102(A)(4) for fraudulent, and deceitful conduct (*see* §III(B)(3); and,

4. in granting an order in the alternative for disqualification for violations by Mr. Lasko and the Lasko firm of the Ohio Code of Professional Responsibility DR 5-102(A) in view of the fact that Mr. Lasko and others in the firm "ought' to called as a witness by SCG in connection with trade secret misappropriations by SCG and the Lasko firm (*see* §III(B)(4).

While it is both clear and unfortunate that such drastic measures against SCG, Mr. Lasko and his firm must be taken, it is respectfully submitted that the Court set deadline for FieldTurf to file such a Motion in support of the same is a bit premature inasmuch as the full scope of Lasko firm's involvement and affiliation with the Defendant needs to be more fully explored. Indeed, targeted discovery, including depositions of Mr. Lasko and potentially others will need to be taken to determine, among other things, exactly how the "attorney's eyes only" documents and information were handled and used and to what extent Mr. Lasko's is involved in the day-to-day operation of SCG's business. Such discovery will also need to include further investigation into the extent of trade secret violations which have occurred to date. Accordingly, it is requested that additional time be afforded FieldTurf to supplement its brief after such additional discovery has been properly conducted. Also, based upon such discovery FieldTurf anticipates moving this Court for leave to file and amended complaint to add trade secret misappropriation claims.

Finally FieldTurf is presented with a difficult situation here and it is indeed unfortunate to seek the relief requested herein against opposing counsel and SCG – but FieldTurf did not ask for this situation.  In fact as detailed in §II FieldTurf has been diligently seeking discovery of SCG's corporate ownership for a long time.  If SCG and Mr. Lasko had been forthcoming, FieldTurf could have avoided this situation.  While one cannot "un-ring a bell," this Court can take the necessary steps to make sure it cannot be rung again.

II.     FACTS, BACKGROUND, AND PROCEDURAL HISTORY

Mr. Lasko's "forced" disclosure to the Court of his ownership interest in SCG has provided FieldTurf with a more enlightened view of past discovery events than it had before.  Now, for example, it makes more sense why SCG's counsel had a strong desire to oppose having a protective order entered in this case, and why SCG has not to this day complied with discovery requests seeking the corporate organization and ownership structure of SCG.   These facts discussed below, in light of Mr. Lasko's disclosure, show an active and persistent concealment by SCG of its true business relationship with Mr. Lasko and his firm Lasko & Lind ("Lasko firm").  The purpose for this concealment is evident.  SCG wanted one of its owners to be able to receive and analyze sensitive competitive information belonging to FieldTurf.  This is something that would not have been allowed by FieldTurf had it known of Mr. Lasko's ownership of SCG.

**A.      The Lasko Firm Oddly Opposed Having A Protective Order Entered In This Case.**

Protective orders are in FieldTurf's experience, very common and usually desired by all parties (usually competitors) in a patent litigation.  However, from the early stage of discovery in this case, SCG balked at the idea of having a protective order entered by the Court.  In explaining his objection to FieldTurf's standard form for a protective order, Mr. Lasko stated that "I [] do not see the need for a protective order, … , inasmuch as the exchange of information at this time is not related to matters reasonably considered to be trade secrets or proprietary information.  We can revisit the need for a protective order in the future as circumstances may warrant." (Attached hereto as **Exhibit 1**, J. Lind letter dated March 1, 2007).

This position was non-sense, but at the time, it permitted Mr. Lasko to intentionally miss an opportunity for full and fair disclosure of his ownership in SCG.  Instead of interposing the above-quoted non sequitur, Mr. Lasko should have advised FieldTurf that he wanted to be personally involved in reviewing sensitive documents so as to advise his client/company regarding same.  While FieldTurf would have objected to this, it would have been better to get

this obstacle out on the table early and try to find a workable solution.  That straight forward approach was apparently abandoned by SCG.

In any event, to get discovery going, FieldTurf filed a Motion for protective order on March 19, 2007 (Doc. No. 36), to protect its proprietary and competitively-sensitive information from disclosure to SCG and others.

SCG opposed the motion arguing that "there is no need for a Protective Order at this time *since the scope of Markman* discovery does not reasonably implicate proprietary or privileged information."  (**Exhibit 2**, Doc. No. 34).  That argument was also nonsense.  At the time, SCG had already requested in discovery some of FieldTurf's most sensitive and confidential business information that SCG alleged to be relevant to its case.  Specifically, SCG's then-pending discovery requests (total of 97 requests for production and 23 interrogatories) implicated voluminous production of information involving trade secrets and other highly sensitive business and technical information.  See, *e.g.,* **Exhibit 3.**

> **B.**   **This Court Entered An Order Protecting Confidential Information**
> **& The Lasko Firm Intentionally Avoided Another Opportunity**
> **For Full Disclosure.**

On April 4, 2007, the Court issued a Protective Order (Doc. No. 44) to guard against the improper use and dissemination of "Confidential" and "Confidential-Attorneys' Eyes Only" information produced in discovery.  The Protective Order explicitly stated, in relevant part, that:

> 7.3   Disclosure of "CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:
>
> (a)   *the Receiving Party's Outside Counsel of record in this action*, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation; (emphasis added)

The term "Outside Counsel" was explicitly defined in the Protective Order as:

> 2.9   Outside Counsel:  attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action.

The purpose for this provision was plain – to allow discovery in this case to move forward while preventing intentional or even accidental disclosure of a party's highly sensitive

information to a competitor or potential competitor.  After the Order was issued, SCG and Mr. Lasko should have disclosed that they would have a problem with abiding by its terms and then asked FieldTurf for a way to work things out.  They avoided this opportunity as well.

Perhaps one of the most telling intentionally avoided options is the use of another law firm to receive and analyze attorney's eyes only documents rather than using Mr. Lasko and his firm.  SCG at the time had, and presently has, two law firms working on the case.  The firm of Lindon & Lindon has been involved in all aspects of the litigation including discovery, motion practice and hearings.  Presumably, Lindon & Lindon does not have an ownership interest in SCG and would have truly qualified as "outside counsel."  SCG and the Lasko firm missed this option with eyes wide open.

### C.      FieldTurf Produced Attorney's Eyes Only Information Thinking It Was Protected From SCG's Owners.

Shortly after the issuance of the Protective Order, FieldTurf produced more than 6400 pages of documents to SCG's counsel.  A significant portion of the documents produced were designated "Confidential" or "Confidential-Attorneys' Eyes Only" under the terms of the Protective Order.  At the time, FieldTurf was not aware of Mr. Lasko's status as an owner of SCG.

Also, on April 12, 2007, the Lasko firm missed yet another opportunity for disclosure when it emailed FieldTurf's counsel a list of outstanding discovery issues to be discussed. (**Exhibit 4**, SCG's email dated April 12, 2007).  In the email, the Lasko firm demanded that FieldTurf deliver copies of deposition transcripts of FieldTurf's president Jean Prevost. The transcripts were from an earlier patent litigation with an unrelated party.  The Lasko firm subsequently that day also demanded the transcript from the deposition of FieldTurf's CEO John Gilman in the same unrelated case.  Ensured by the fact that the Protective Order had been entered in this case, FieldTurf's counsel emailed a copy of the deposition transcripts of Jean Prevost and John Gilman.  (**Exhibit 5**, N. Lee email dated April 12, 2007, and **Exhibit 6**, N. Lee email dated April 18, 2007).  These deposition transcripts were not publicly available.  (**Exhibit**

**3**).[1]    Also, these deposition transcripts were designated in their entirety as "Confidential-Attorneys' Eyes Only."  *Id.*

> **D.**  **In Violation Of Its Discovery And Ethical Obligations, SCG, Mr. Lasko, And The Lasko Firm Actively And Repeatedly Continued To Hide Their True Relationship.**

On July 17, 2007, in a telephone conference addressing outstanding discovery issues, FieldTurf again asked SCG and its counsel to respond to its January 31, 2007 document requests seeking, among other things, SCG's corporate structure and ownership.  (**Exhibit 7**, Document Request Nos. 93-103).  SCG's counsel refused to fully produce documents under the requests (in hindsight for obvious reasons), but instead offered only information relating to countering an allegation that SCG was not in good financial health.  *See* Memo prepared by SCG's counsel on July 17, 2007, **Exhibit 8**, ¶ 5.  This evasive promise was never kept – potentially because it may have inadvertently led to discovery of the ownership interest of Mr. Lasko.

Based upon the repeated evasion by SCG and its counsel to divulge its corporate ownership, and based upon the fact that Mr. Lasko seemed to take that issue and others so personally, (*i.e.*, like an owner and not an outside counsel), FieldTurf became suspicious that Mr. Lasko had more than an attorney-client interest in SCG.

So, on August 28, 2007, in another discovery teleconference where Mr. Lasko again refused to produce documents showing SCG's corporate structure and ownership, Mr. Lasko was asked directly if he or anyone else at his firm had any pecuniary interest in SCG.  Mr. Lasko was evasive on that question and was then asked simply if he or others at his firm had any relationship with SCG other than a purely attorney-client relationship.  Mr. Lasko stated only that neither he nor SCG was obligated to provide that information.   FieldTurf's counsel then reminded Mr. Lasko that FieldTurf's discovery requests served in January 2007 specifically sought this information and SCG was obliged to produce this information long ago.[2]

---

[1] The deposition transcripts total more than 450 pages.  For purposes of economy, only the sample pages of the relevant deposition transcripts are attached under seal as Exhibit 3.  The entire report will be made available to the Court under seal upon request.

[2] FieldTurf's First Set of Production of Documents and Things, Nos. 93-103 seeks information relating to financial and corporate ownership of SCG.  No documents have been produced to date which in any way are responsive to these requests.  Instead, SCG objected that such requests are "privileged and proprietary and demands … [are] irrelevant and not reasonably calculated to lead to the discovery of admissible evidence relating to the factual allegations ascertainable in the Complaint."  **Exhibit 9**.

On August 29, 2007, FieldTurf's counsel Mr. Lake, sent an email to Mr. Lasko, briefly summarizing their discussions on August 28, 2007, and iterating FieldTurf's concern on the issue of production of "Confidential-Attorneys' Eyes Only" information if Mr. Lasko and his firm were not truly outside counsel.  Specifically, Mr. Lake wrote:

> We asked if there was any relationship between Ron's [Mr. Lasko's] law firm and the Defendant beyond a purely attorney-client relationship.  ***Ron answered that he did not believe that such information would have to be disclosed. We note here that we disagree and that such information would be responsive to FieldTurf's document requests Nos. 93-103 to which SCG objected.***

> We also pointed out that to the extent there is any pecuniary, business, or fiduciary relationship between Ron's firm (or any other firm working on the case), and the defendant, ***his firm should not see or be otherwise privy to FieldTurf's confidential information***.  Where the lawyers wear dual hats (lawyer-investor, lawyer-partner, etc.) there is too much risk that the information would be inadvertently, or unavoidably used to FieldTurf's detriment outside of this litigation.  In view of this, ***we ask that you reconsider full disclosure on this issue.***

(Emphasis added) (**Exhibit 10**, M. Lake's email to Ron Lasko dated August 29, 2007). No one from the Lasko firm ever responded.

### E.    Mr. Lasko Finally Admits His Ownership Interest To This Court At The Status Conference on September 6, 2007.

Because FieldTurf was very concerned about its proprietary attorney's-eyes-only information, and because of the complete stone walling of the Lasko Firm and SCG for about nine (9) months, FieldTurf's counsel, Mr. Factor, raised the issue with the Court at the September 6, 2007, status conference.  Not able to rely on his prior avoidance artifices of silence, delay, meaningless promises, or double-speak, Mr. Lasko was finally cornered when this Court inquired into his interests in SCG.  To FieldTurf's dismay, Mr. Lasko reluctantly admitted that he owned 8% of SCG.  Unfortunately nothing was said about his involvement in the day to day operations of SCG or any other SCG related entity.

### F.    The Lasko Firm And SCG Have Since Escalated The Problem By Refusing To Mitigate The Harm They Caused.

#### 1.    SCG Unreasonably Opposes The Deposition Of Mr. Lasko

FieldTurf's whole point of seeking a protective order from this Court with the higher tier of attorney's-eyes-only was so that it would not have to run the risk of having its most sensitive

information intentionally or even inadvertently disclosed to competitors or potential competitors by, *e.g.*, in-house counsel or others having routine contact with, or interest in, the day to day operations of SCG.  Toward that end, and as a curative measure, FieldTurf has no choice but to inquire further into Mr. Lasko's complete involvement with SCG's day to day operation and his handling of the information he has studied to date.

Thus, on September 7, 2007, FieldTurf served a notice of deposition on Ron Lasko to seek his testimony as an owner of SCG to explore the issues and prevent any further breaches of security.  Instead of doing the right thing and offering the testimony of Mr. Lasko to help assess the damage which needed to be contained, on September 10, 2007, SCG filed a Motion for Protective Order (Doc. No. 84) seeking to quash his deposition  outright.

In addition, SCG still has yet to produce information regarding SCG's corporate structure and ownership information which could mitigate or reduce the need for his deposition.

> ## 2.    SCG Has Stonewalled Other Efforts To Repair The Existing Damages And Mitigate Future Harm.

Based upon this Court's recognition of the seriousness of Mr. Lasko's relationship with SCG, it directed the parties to try to resolve the situation and if that could not happen, FieldTurf would have leave to file a motion to disqualify the Lasko firm by September 24, 2007.  Doc. No. 85.

On September 10, 2007, in compliance with those directions, Mr. Lindon from SCG's other law firm working on the case, forwarded a proposed stipulation of the parties to handle attorney's eyes-only documents in the future, **Exhibit 11**.

In FieldTurf's view, Mr. Lindon's proposal sought to keep Mr. Lasko's fingers still too deep into the forbidden fruit.  So, on September 12, 2007, FieldTurf's counsel preferred its concerns, comments, and proposed amendments to Mr. Lindon's proposal, **Exhibit 12**.  To date, there has been no response from SCG.

> ## G.    SCG And The Lasko Firm Are Violating Another Court's Oder To Illicitly Gain Access To FieldTurf's Attorney's Eyes Only Information.

While the scenario described above in §§ II A-F was and is happening in the present suit, SCG is also involved in a state court lawsuit against two of FieldTurf's independent sales

representatives alleging unfair competition, deceptive trade practices, and tortious interference with business and pre-contractual relations.[3]  (**Exhibit 13**).

In that suit FieldTurf's sales representatives sought and received a protective order with an attorney's eyes only designation for highly sensitive information.  That order explicitly defined the term "Outside Counsel" as "attorneys who are not employees, directors, officers, or *shareholders* of a Party but who are retained to represent or advise a party in the action." (Emphasis added) (**Exhibit 14**).

Mr. Lasko on behalf of SCG has nonetheless improperly sought and received discovery in that action directed at FieldTurf documents designated, "Confidential – Attorneys' Eyes Only."  This was a direct violation of the state court's order given Mr. Lasko's stock ownership in SCG.

In further disrespect of the state court's order, SCG re-channeled these same documents to FieldTurf in this case designating same with document control numbers 356 – 432, even though the state court's order provided in relevant part that:

> 7.3  Disclosure of "CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL – ATTONREYS' EYES ONLY" *only to*:
>
> (a) the Receiving Party's Outside Counsel of record *in this action*, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation (so long as such employee is not a director, officer, or shareholder of the Receiving Party).  (Emphasis added).

Counsel for the FieldTurf sales representatives in the state court case has experienced a similar lack of candor or cooperation from Mr. Lasko and SCG regarding Lasko's true relationship with SCG.  For example, in an email dated September 4, 2007, attorneys for the FieldTurf sales sepresentatives in that case continued to state that they would not produce any documents designated "Confidential – Attorneys' Eyes Only" until Mr. Lasko and Lasko firm resolved the issue of whether the firm or any attorney in the firm had any interest in SCG other than purely an attorney-client relationship.  **Exhibit 15.**  In this email, attorneys cautioned that information already produced and designated "Confidential – Attorneys' Eyes Only" should be

---

[3] The state court action appears to be based upon the same facts and causes of action as SCG's counterclaims in the present case – albeit naming FieldTurf Sales Representatives as defendants.

withheld from any "entity having more than an attorney-client relationship with Defendant." **Exhibit 15.** Very troubling is the fact that to date, neither the Lasko firm nor SCG has responded to this request to mitigate the violation of the state court's order protecting FieldTurf's information.

> **H.** **SCG And The Lasko Firm Have Violated The Ohio Uniform Trade Secrets Act 1331.61(B)(1) By Misappropriating FieldTurf's Attorneys' Eyes Only Information.**

Under Ohio Uniform Trade Secrets Act ("OUTSA") 1331.61(B)(1), misappropriation means:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

FieldTurf is convinced that both SCG and the Lasko firm have misappropriated FieldTurf's trade secret information by actively and persistently concealing Mr. Lasko's ownership of SCG to acquire attorney's eyes only information in deposition transcripts and documents as discussed above (*see*, §II (C)).

While FieldTurf is also convinced that trade secrets are implicated in a majority of what it produced under the attorney's eyes only designation, for the purposes of this motion FieldTurf need only illustrate one trade secret misappropriation.

The deposition transcript of John Gilman, FieldTurf's former CEO, discussed in §II (C) above contained confidential financial information of FieldTurf. *See e.g.,* **Exhibit 3**, filed under seal, at pp. 16-20. Under OUTSA, 1331.61 (D), trade secret means "information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, *financial information ...*" (Emphasis added). FieldTurf also took very careful measures to ensure that this trade secret information was to be treated as such. For example, when FieldTurf's counsel sent the deposition transcripts attached to two separate emails (**Exhibits 4 and 5**), FieldTurf expressly stated that the transcripts were to be treated as "Confidential – Attorneys' Eyes Only." *Id.* The transcripts themselves have the marking identifying them as "Confidential – Attorneys' Eyes Only," on each individual page (**Exhibit 3,** filed under seal).

This one example demonstrates that the Lasko firm and SCG's active concealment of Mr. Lasko's ownership interest of SCG resulted in them employing a knowingly improper means for acquiring trade secret information, *i.e.*, "a misappropriation."

## III.   ARGUMENT

### A.   The Law.

#### 1.   Default Judgment As A Discovery Sanction.

Rule 37 authorizes the court to impose sanctions, including default judgment, when a litigant fails to comply with the discovery process.  Rule 37(b)(2) provides, in pertinent part, as follows:

> If a party…fails to obey an order to provide or permit discovery…the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (C)  An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

"Discovery orders that can be enforced through Rule 37(b) include protective orders issued under Federal Rules of Civil Procedure 26(c)."  *Polquin v. Garden Way Inc.*, 154 F.R.D. 29, 31 (D. Me. 1994) citing *Westinghouse Electric Corporation v. Newman & Hotlzinger*, 992 F.2d 932, 934-35 (9th Cir. 1993); Fed. R. Civ. P. 37, Notes of Advisory Committee, 1970 Amendment, subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders," including Rule 26(c) protective orders).  *See also Coleman v. American Red Cross*, 979 F.2d 1135, 1140 (6th Cir. 1992) ("When a party violates a protective order, a district court may impose proper sanctions to remedy the violation… [I]n some cases a default judgment may even be appropriate.").

The choice to render a drastic sanction, such as a default judgment, is within the discretion of the court upon the showing that the disobedient party acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules.  *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976); *Exact Software North America, Inc. v. Infrocon, Inc.*, 479 F. Supp. 2d 702, 717 (N.D. Ohio 2006); *Developers*

*Surety & Indemnity Co. v. Skyway Industrial Painting & Contracting, Inc.*, 2007 U.S. Dist. LEXIS 45521, at *5-6 (N.D. Ohio 2007). Although severe, such recourse "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, 427 U.S. at 640 (1976); *Stamtec, Inc. v. Anson*, 195 Fed. Appx. 473, 478 (6th Cir. 2006) (Unpublished Decision) (**Exhibit 16**).

"To ascertain whether default judgment and dismissal are appropriate, the Court must analyze four factors. The factors are, '(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the [offending] party's conduct; (3) whether the [offending] party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered…'" *Advance Payroll Funding, Ltd. v. AAP Staff Services, Inc.*, 2007 U.S. Dist. LEXIS 29410, at *3-4 (N.D. Ohio 2007) quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). While no one factor is dispositive, "'dismissal [or default] is proper if the record demonstrates delay or contumacious conduct.'" *Id*. Dismissal or entry of default judgment is proper if a party has the ability to comply with discovery orders but fails to do so. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990); *Exact Software*, 479 F. Supp. 2d at 717 (N.D. Ohio 2006).

### 2. Disqualification of Counsel As A Sanction (Violation Of Protective Order).

Additionally, the sanction of disqualification of counsel has been contemplated and imposed in Federal Courts for sanctions under FRCP 37(b), for violating a protective order. See *Biocore Medical Technolgies, Inc. v. Hamid Khosrowashahi*, 1998 U.S. Dist LEXIS 20512, at *9-15 (D. Kan. 1998) (District Court disqualified the attorney for the Defendant for violating the protective order issued in the case by providing information and deposition testimony to a third party for use in a completely different action *reasoning that, if the Defendant's attorney had violated the protective order in such a manner before, there was no reason to suspect he would not violate the protective order again*.).

### 3. Disqualification of Counsel As A Sanction For Violations Of Disciplinary Rules DR 1-102(A)(4).

The Ohio Code of Professional Responsibility Disciplinary Rules DR 1-102(A)(4) states that "A lawyer shall not: (4) engage in conduct involving *dishonesty, fraud, deceit, or misrepresentation*."  (Emphasis added).

### 4. Disqualification of Counsel As A Sanction For Violations Of Disciplinary Rules DR 5-102(A).

The Ohio Code of Professional Responsibility Disciplinary Rules DR 5-102(A) further states that:

> If, after undertaking employment in completed or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).

Ohio Code of Professional Responsibility Disciplinary Rules DR 5-101(B)(1) through (4) provide the following exceptions to attorney disqualification for being a witness:

> (1)  If the testimony will relate solely to an uncontested matter.
>
> (2)  If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3)  If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4)  As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

"The Ohio Supreme Court has promulgated a two-step analysis for ruling on a motion to disqualify under DR 5-102(A)."  *Omnicare, Inc. v. Provider Services, Inc.*, 2006 U.S. Dist. LEXIS 6497, at *9-10 (N.D. Ohio 2006).  "First, the court must determine (1) whether, without reference to DR 5-102(A) the attorney's testimony is admissible, and (2) whether the exceptions in DR 1-501(B)(1)-(4) apply."  *Omnicare*, 2006 U.S. Dist. LEXIS 6497 at *10 citing *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St. 3d 256, 257 (1987).  "'In making these determinations, the court is not deciding whether a Disciplinary Rule will be violated, but rather preventing a potential violation of the Code of Professional Responsibility.'"  *Omnicare*, 2006 U.S. Dist. LEXIS 6497 at *10 quoting *Mentor Lagoons*, 31 Ohio St. 3d at 260.  If the court determines that

the attorney's testimony is admissible and does not fit within any of the exceptions in DR 5-101(B), the attorney and his law firm must be dismissed.  *Omnicare*, 2006 U.S. Dist. LEXIS 6497 at *14-15.

"Motions to disqualify counsel should be considered with extreme caution, in view of the litigant's interest in retaining counsel of the litigant's choice, and the danger the opposing party might use a motion to disqualify to achieve tactical advantage."  *Baker v. BP America, Inc.*, 768 F. Supp. 208, 213 (N.D. Ohio 1990).  "Nevertheless, neither the Sixth Circuit Court of Appeals nor the Supreme Court of Ohio have hesitated to rule that an attorney whose testimony would cause a conflict under DR 5-101(B) or DR 1-502 must either voluntarily withdraw from the case or face disqualification."  *Baker v. BP America, Inc.*, 768 F. Supp. at 213 citing *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir. 1982); *Mentor Lagoons*, 31 Ohio St. 3d at 260.  Courts have broad discretion in ruling on motions to disqualify… "[W]hen faced with a request for disqualification, a 'delicate balance must be struck between two competing considerations: the prerogative of a party to proceed with counsel of its choice and the need to uphold ethical conduct in courts of law.'"  *Pioneer-Standard Electronics, Inc. v. Cap Gemini American, Inc.*, 2002 U.S. Dist LEXIS 7120, at *4-5 (N.D. Ohio 2002) quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990) (citing *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed. Cir. 1984)).

**B.**     **Analysis**

**1.**     **A Default Judgment Should Be Entered Against SCG And Its Counterclaims Shout Be Dismissed In This Case Based Upon SCG And The Lasko Firm's Active , Knowing And Persistent Concealment of Discovery In Particular Mr. Lasko's Ownership Interest In SCG, In Violation Of The Discovery Rules and The Protective Orders in This Case And In The State Court Case.**

In this case Mr. Lasko and SCG violated Rule 37 as they failed to properly comply with the discovery process.  In particular SCG to this date has refused to produce documents indicating the ownership and control of SCG pursuant to requests served in January 2007.  This ownership information is relevant to the issues in FieldTurf's complaint but it is even more relevant toward preventing SCG's ability to misappropriate trade secrets and obtain competitive information from FieldTurf.  Vexatiously, even after Mr. Lasko's forced disclosure to this Court

regarding his ownership interest, SCG is still withholding further information on this point. Hence under Rule 37(b)(2)(C) this Court should render a judgment by default "against the disobedient party."

In addition, SCG and the Lasko firm have violated the letter or at least the spirit of this Courts Protective Order (Doc. No. 44) which permits attorney's eyes only information to be received only by "outside counsel."  Certainly, an owner of the Defendant cannot be said to be "outside counsel."     "Discovery orders that can be enforced through Rule 37(b) include protective orders issued under Federal Rules of Civil Procedure 26(c)."  *Polquin v. Garden Way Inc.*, 154 F.R.D. 29, 31 (D. ME. 1994) citing *Westinghouse Electric Corporation v. Newman & Hotlzinger*, 992 F.2d 932, 934-35 (9th Cir. 1993); Fed. R. Civ. P. 37, Notes of Advisory Committee, 1970 Amendment, subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders," including Rule 26(c) protective orders).  *See also Coleman v. American Red Cross*, 979 F.2d 1135, 1140 (6th Cir. 1992) ("When a party violates a protective order, a district court may impose proper sanctions to remedy the violation… [I]n some cases a default judgment may even be appropriate.").

The choice to render the requested relief here is within the discretion of this Court as SCG and Mr. Lasko have clearly acted willfully and in bad faith throughout this case and in the parallel state case, to illicitly obtain sensitive information sought to be protected by this Court's Order and the state court's order.  Part of this illicit behavior is a failure to timely provide requested discovery as noted in §II D above. See, *e.g.*, *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976); *Exact Software North America, Inc. v. Infrocon, Inc.*, 479 F. Supp. 2d 702, 717 (N.D. Ohio 2006); *Developers Surety & Indemnity Co. v. Skyway Industrial Painting & Contracting, Inc.*, 2007 U.S. Dist. LEXIS 45521, at *5-6 (N.D. Ohio 2007).

This case meets all of the factors required for a default.  First, it is abundantly clear that SCG through one of its owners Mr. Lasko knew what he was doing as he avoided disclosure at every turn and almost all costs, until he was forced to confess when compelled by this Court. His behavior is hence due to willfulness.  Second, FieldTurf, SCG's adversary, is prejudiced by Mr. Lasko's conduct in many ways including that it is at high risk of losing competitive advantages over SCG and others who are privy to the information obtained by the Lasko firm and is at risk of losing the value of its trade secret and highly sensitive information.  Mr. Lasko is

an experienced attorney who knows the consequences and risks involved with the failure to produce discovery, to actively conceal discoverable information, and to violate protective orders. *Advance Payroll Funding, Ltd. v. AAP Staff Services, Inc.*, 2007 U.S. Dist. LEXIS 29410, at *3-4 (N.D. Ohio 2007) quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

While no one factor of the above-identified factors present in this case is dispositive, FieldTurf submits that the relief requested here is proper as the record demonstrates both "delay and contumacious conduct."  *Id*.

> **2.     In the Alternative, Assuming *Arguendo* That The Court Finds Default Judgment Inappropriate, This Court Should Disqualify Mr. Lasko And His Firm Under Rule 37(b) For Violating The Protective Order Entered In This Case.**

As noted in §§II B-F above, Mr. Lasko and his firm have violated the letter or at least the spirit of this Court's Protective Order.  This violation alone, aside from the aggregation of discovery abuse, violation of other orders, and active and persistent concealment of a requested fact while knowing its criticality to the discovery process, -- provides for the sanction of disqualification.

In *Biocore Medical Technolgies, Inc. v. Hamid Khosrowashahi*, 1998 U.S. Dist LEXIS 20512, at *9-15 (D. Kan. 1998), the district court disqualified an attorney for the Defendant for violating the protective order issued in the case by providing information and deposition testimony to a third party for use in a completely different action reasoning that, just like Mr. Lasko in this case, if the Defendant's attorney had violated the protective order in such a manner before, there was no reason to suspect he would not violate the protective order again.

In addition to satisfying the facts in *Biocore,* the attorney here, Mr. Lasko, has compounded his violation by preventing discovery of his violation (*i.e.,* preventing production of documents showing ownership of SCG) and has violated another court's protective order expressly excluding him, as a shareholder, from receiving the FieldTurf information he requested and received.  There has also been no contrition by Mr. Lasko, his firm, or SCG to date for these acts.  There is every reason to believe that Mr. Lasko and his firm will continue to disrespect the Protective Order and the discovery process.

Applying the reasoning of the District Court in *Biocore* to this case, a disqualification should be the minimum penalty the Lasko firm suffers.  While the facts surrounding the violation

of the protective order in this case differ from those in *Biocore*, the reasoning used by that court in imposing the sanction of disqualification on the Defendant's attorney applies at least as well in this case.  In *Biocore*, the District Court of Kansas disqualified the Defendant's attorney for providing documents to a third party for use in a litigation against the same Plaintiff.  The court reasoned that "Butler's [Defendant's attorney] violation of the protective order constitutes an example of 'conduct that adversely reflects on the lawyer's fitness to practice law.'"  *Id*. at *13. In ultimately holding that the Defendant's attorney must be disqualified, the district court stated that because the Defendant's attorney was unwilling "to abide by the terms of the protective order in a case which involves highly sensitive trade secret claims…the Court is unwilling to accept the obvious risk that Butler will commit further violations of the protective order," as this was the only way to ensure no further violations of the court's order would occur.  *Id*. at *14-15.

Throughout this litigation, the Lasko firm has continually concealed the fact that Mr. Lasko is an owner of SCG while reviewing confidential documents in violation of the Protective Order.  The Lasko firm's conduct indicates a clear intention to continue to violate this Court's order in addition to the numerous violations of the Code of Professional Responsibility.  The Lasko firm has stated that it will continue to represent SCG.  **Exhibit 17**.  The Lasko firm has refused to withdraw a motion to compel production of FieldTurf pending before this Court seeking further FieldTurf confidential information.  **Exhibit 18**.  In the related litigation in Ohio State Court, the Lasko firm has decidedly refused to withdraw as counsel to SCG, even after Mr. Lasko's admission, despite that Court's protective order explicitly defining "outside counsel" as "attorneys who are not employees, directors, officers, or shareholders or a Party but who are retained to represent or advise a Party in this action."  In both litigations Mr. Lasko and his firm have shown a flagrant disregard for protective orders issued by courts.  Because of the Lasko firm's conduct throughout this litigation and its clear intent to continue such conduct, there is absolutely no reason to believe that the Lasko firm will conduct itself with anything but a callous and blatant disregard for this Court's orders.

   3.      **In the Alternative, Assuming *Arguendo* That The Court Finds Default Judgment Inappropriate, The Ohio Code Of Professional Responsibility Disciplinary Rules Require Disqualification of Ron Lasko And His Law Firm Under DR 1-102(A)(4).**

Throughout this litigation, Mr. Lasko and his law firm, have repeatedly violated DR 1-102(A)(4) by fraudulently and deceitfully: misrepresenting to this Court and FieldTurf's counsel that they are truly "outside counsel" under the letter and spirit of this Court's Protective Order; and, obstructing discovery which would have uncovered the truth about the misrepresentation (**Exhibit 7**).  As detailed in §II D, FieldTurf has repeatedly, directly asked Lasko firm whether or not anyone at the firm, in particular Mr. Lasko, has any relationship with SCG other than that of attorney.  Each time FieldTurf has requested information regarding Mr. Lasko's interest in SCG, SCG and Mr. Lasko have responded that SCG does not have to provide such information because it is proprietary and privileged, or that such information is irrelevant to the claims and defenses of the case.  As a result of Mr. Lasko's fraudulent conduct as an attorney and refusal to respond to discovery requests, he has received and viewed numerous documents designated "Confidential – Attorneys' Eyes Only" while being an owner of SCG.  The Lasko firm's fraudulent misrepresentations and deceitful conduct have led to a violation of DR 1-102(A)(4).

Disqualifying the Lasko firm will not place a substantial hardship on SCG.  In fact, when analyzing the situation and applying the balancing test described in *Pioneer-Standard*, dismissal is advantageous in this case.  In this case, the Court does not have to worry about any balancing of SCG's prerogative to proceed with the counsel of its choice as required in Ohio law.  *See Pioneer-Standard Electronics, Inc. v. Cap Gemini American, Inc.*, 2002 U.S. Dist LEXIS 7120, at *4-5 (N.D. Ohio 2002).  SCG throughout this litigation has employed two firms for outside counsel, the Lasko firm and Lindon & Lindon.  Therefore, if the Lasko firm is disqualified for its violations of the protective order, SCG will still have a counsel of choice in Lindon & Lindon.  Additionally, Lindon & Lindon's presence removes the burden of SCG having to find new litigation counsel and ensures that a disqualification of the Lasko firm will not create any delay in getting to trial.  In fact, disqualifying the Lasko firm will more likely streamline and shorten the discovery and trial time because FieldTurf will no longer have any concerns about Mr. Lasko, the Lasko firm or SCG misappropriating anymore of its confidential information.

    **4.**  **In the Alternative, Assuming *Arguendo* That The Court Finds Default Judgment Inappropriate, The Ohio Code Of Professional Responsibility Disciplinary Rules Require Disqualification of Ron Lasko and His Law Firm Under DR 5-102(A) As At Least Mr. Lasko Will Be A Witness To FieldTurf's Trade Secret Misappropriation Claim.**

As identified in §II H above, Mr. Lasko as an owner of SCG has misappropriated at least FieldTurf's financial trade secrets. Accordingly, SCG and likely Mr. Lasko will be named defendants in FieldTurf's anticipated amended complaint directed to trade secret misappropriation. The Ohio Code of Professional Responsibility Disciplinary Rules DR 5-102(A) provides that if a lawyer or another lawyer in his firm <u>ought to be called</u> as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial. Mr. Lasko will most assuredly be called as a witness by SCG in its defense of the violation of trade secrets as he was the business owner responsible for the misappropriation.

This Court need not determine whether a violation will occur in the proposed scenario but rather it should look to preventing a violation. *Omnicare*, 2006 U.S. Dist. LEXIS 6497 at *10 quoting *Mentor Lagoons*, 31 Ohio St. 3d at 260.

Also as noted above, SCG has two law firms engaged in his litigation. The firm of Lindon & Lindon has been involved in all aspects of the case. Accordingly, disqualifying the Lasko firm would not work a prejudice on SCG and would not slow down the progress of the case. Rather disqualification is more likely to have a positive effect on: discovery progress; and, preventing further violations of court orders, discovery rules, and FieldTurf's rights.

### C. Monetary Sanctions Are Also Appropriate

FieldTurf is also entitled to the reasonable expenses, including attorneys' fees, it has incurred in the preparation of this motion, and multiple proceedings necessitated by SCG's misconduct. It is especially pertinent in this case when a significant portion of FieldTurf's time and expense was dedicated to its efforts in educating and sheparding compliance by SCG and its counsel of their obligations under the Federal and Local Rule of Civil Procedure, as well as the Court's Order.

## IV. CONCLUSION

In view of the above, Plaintiffs, FieldTurf USA, Inc., and FieldTurf Tarkett, Inc. ask this Court to grant their motion to enter a default judgment against SCG, or, in the alternative, disqualify attorney Ron Lasko and his law firm from representing SCG in this litigation.

Counsel certifies that: (1) this is a dispositive motion; (2) the case has been assigned to a complex management track pursuant to the Case Management Order dated December 26, 2006;

and (3) the Memorandum adheres to the page limitations of thirty (30) pages for complex cases as approved by Local Rule 7.1(f) for the United States District Court, Northern District of Ohio.

Respectfully submitted,

Date:  September 25, 2007        _s/ Micheal D. Lake_____
Jody L. Factor, Esq.
Micheal D. Lake, Esq.
Nicholas S. Lee, Esq.
FACTOR & LAKE, LTD
1327 W. Washington Blvd.
Suite 5G/H
Chicago, IL  60607
Phone: (312) 226-1818
Facsimile: (312) 226-1919

Co-Counsel:

H. Alan Rothenbuecher (0041883)
Schottenstein, Zox & Dunn Co., LPA
US Bank Centre at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, OH 44115
Phone: 216-621-6501
Facsimile: 216-621-6502

*Attorneys for Plaintiffs*
*FieldTurf USA, Inc. and FieldTurf Tarkett Inc.*

## CERTIFICATE OF SERVICE

I, Micheal D. Lake, hereby certify that on this 1st day of October 2007, a copy of the foregoing document entitled, **"FIELDTURF'S COMBINED MOTION & MEMORANDUM IN SUPPORT OF DEFAULT JUDGMENT AGAINST THE DEFENDANT SPORTS CONSTRUCTION GROUP, LLC., IN THE ALTERNATIVE, FOR DISQUALIFICATION OF COUNSEL"** was filed electronically via the Court's ECF/CM System.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

  s/ Micheal D. Lake
Micheal D. Lake
FACTOR & LAKE, LTD.
1327 W. Washington Blvd., Suite 5G/H
Chicago, Illinois 60607
Phone:  (312) 226-1818
Fax:  (312) 226-1919
Email:  mlake@factor-lake.com