**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| FIELDTURF USA, INC., et al. | CASE NO. 1:06 CV 2624 |
| Plaintiffs, | Judge Patricia A. Gaughan |
| v. | **SPORTS CONSTRUCTION GROUP,** |
| | **LLC'S BRIEF IN OPPOSITION TO** |
| SPORTS CONSTRUCTION GROUP, LLC. | **FIELDTURF'S COMBINED MOTION** |
| | **AND MEMORANDUM IN SUPPORT** |
| Defendant. | **OF DEFAULT JUDGMENT AGAINST** |
| | **DEFENDANT SPORTS** |
| | **CONSTRUCTION GROUP, LLC. IN** |
| | **THE ALTERNATIVE FOR** |
| | **DISQUALIFICATION OF COUNSEL** |

Defendant Sports Construction Group, LLC ("SCG") hereby opposes Plaintiffs', FieldTurf USA, Inc. and FieldTurf Tarkett Inc.'s (collectively referred to as "FieldTurf"), Motion and Memorandum in Support of Default Judgment Against Defendant Sports Construction Group, LLC in the Alternative for Disqualification of Counsel.

## **FACTS**

The parties entered into an agreement, which was then entered as a Protective Order [Document Number 44], which provides that a party may designate certain material deemed to be of a confidential nature as "Confidential – Attorneys' Eyes Only." The Protective Order generally provides that such material may only be produced to, and used by, "outside counsel" for a party.

The Protective Order specifically defines "outside counsel" as follows:

2.9 Outside Counsel: attorneys who are not employees of a Party but

who are retained to represent or advise a Party in this action;

None of the attorneys of the law firm Lasko & Associates, Co. LPA, including Ronald H. Lasko, are employees of SCG.[1]

FieldTurf served a First Set of Production of Documents and Things on SCG. These requests sought, among others, documents reflecting the financial affairs and ownership of SCG. SCG responded to these requests by stating objections on various grounds, including that such information was not relevant to the issues in this case, and not reasonably calculated to lead to the discovery of relevant information.[2]

FieldTurf did not challenge SCG's assertion of objections to these requests in its Motion to Compel Discovery [Document Number 83].

At various times during conversations with SCG's attorneys, FieldTurf's attorneys requested that SCG provide information as to the shareholders of SCG. SCG's attorneys declined to gratuitously provide such information, which position was consistent with the objections SCG asserted in response to FieldTurf's formal requests for such information.[3]

At a Status Conference before the Court on Thursday, September 6, 2007, FieldTurf attorney Jody Factor raised an issue about the ownership of SCG, stating that he had reason to believe that Ronal H. Lasko had some involvement with SCG beyond trial counsel. His remarks were made in the context of having some concern over the production of documents marked "Confidential – Attorneys' Eyes Only" to counsel who also had an ownership interest in SCG. When Mr. Factor finished speaking – and before the Court could say anything – undersigned counsel spoke up and

---

[1] See affidavit of Ronald H. Lasko, attached hereto as **Exhibit A**.

[2] See Exhibit 9 attached to FieldTurf's motion brief.

[3] See affidavit of Ronald H. Lasko, attached hereto as **Exhibit A**.

stated that Mr. Lasko had an 8% ownership interest in SCG.  Various counsel for SCG then discussed how FieldTurf's concerns could be met without the necessity of formal motions and briefing.  In particular, SCG attorney James Lindon proposed that all such documents could be directed to his office and a procedure be put into place whereby the substance of such documents could be kept confidential from Mr. Lasko.  The Court directed that the parties spend a week to discuss the matter and attempt to work out a negotiated solution.

The next day, Friday, September 7, 2007, FieldTurf sent a Notice of Deposition to undersigned counsel's office requiring that Mr. Lasko appear for deposition the following Wednesday.

On Monday, September 10, SCG filed a Motion for Protective Order [Document Number 84] requesting an order that the deposition of Mr. Lasko not go forward.

Also, on September 10, FieldTurf's counsel expressed a concern that confidential information might come up at the deposition of FieldTurf's CEO, David Moszkowski, which had previously been scheduled for September 11, and therefore requested that SCG consent to cancel that deposition.[4]  The deposition was subsequently cancelled.  Eventually, due to FieldTurf's expressed concerns, other previously scheduled depositions of FieldTurf employees and agents were also canceled.[5]

Attorney Lindon attempted, and continues to attempt, to negotiate an agreement as the handling of confidential information.  However, those efforts have been stymied due to FieldTurf's

_____

[4] See affidavit of Thomas J. Vozar, attached hereto as **Exhibit B**.

[5] In an effort to make progress on discovery, notwithstanding FieldTurf's refusal to permit depositions to go forward, SCG has recently issued approximately 23 subpoenas to various third parties seeking documents relevant to the substantive issues in this case.

insistence on greatly expanding the scope of such an agreement beyond the documents originally discussed by FieldTurf's counsel at the Status Conference to include information that FieldTurf believes might come out at a deposition.  FieldTurf insists that no attorney from the Lasko law firm, nor anyone from SCG, should attend depositions to avoid the possibility that confidential information might be revealed by a witness before FieldTurf could object and appropriately instruct the witness.

FieldTurf then filed its current motion, which seeks a default judgment against SCG and/or the disqualification of Mr. Lasko and his law firm as counsel for SCG.  This combined motion relies on the assertion that SCG and/or its counsel violated the terms of a Protective Order that was demanded by and drafted by FieldTurf,[6] signed by the parties's attorneys, and journalized as an Order of the Court [Document Number 46].

SCG has provided an affidavit[7], reflecting that Mr. Lasko and his law firm are SCG's choice of primary counsel, and that Mr. Lindon was retained as counsel for SCG for certain limited purposes only.

## LAW AND ARGUMENT

SCG notes first that FieldTurf has made many allegations in its brief; however, there is no affidavit attached to its brief to support these allegations.  Thus, FieldTurf has failed to make an evidentiary showing to support the extreme and highly unusual relief it seeks.  See *A.B.B. Sanitec West v. Weinsten*, 2007-Ohio-2116. FieldTurf's combined motion must fail on this ground alone.

---

[6] See affidavit of Ronald H. Lasko, attached hereto as **Exhibit A**.

[7] Attached hereto as **Exhibit C**.

## The Protective Order

FieldTurf's combined motion depends for its vitality upon FieldTurf's assertion that SCG and /or its counsel have violated the terms of the Protective Order that was demanded by, and drafted by, FieldTurf.  Without a finding that the Protective Order was violated, FieldTurf's motion has no legs.

The relevant portions of the Protective Order, which was drafted by Plaintiffs, provides that "protected material" is information that is labeled "Confidential – Attorneys' Eyes Only."  The Protective Order generally provides that such material may only be produced to, and used by, "outside counsel" for a party.

However, and of controlling importance to this motion, the Protective Order explicitly defines "outside counsel" as follows:

> 2.9 <u>Outside Counsel</u>: attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action;

All of SCG's attorneys of record in this case fall squarely within the foregoing definition. Neither Ronald H. Lasko, nor any attorney in his law firm, are employees of Sports Construction Group, LLC.  See affidavit of Ronald H. Lasko, attached hereto as **Exhibit A.**

FieldTurf has never had any basis to believe that Mr. Lasko was an employee of SCG and has submitted no evidence to show that Mr. Lasko or any attorney in his law firm is an employee. Therefore, FieldTurf's had no good faith basis upon which to bring its motion, in violation of Fed.R.Civ.P. 11.[8]

---

[8] SCG continues to assert that FieldTurf's motion contains impermissible *ad hominem* attacks on SCG's counsel, which arguments are contained in SCG's Motion to Strike [Document Number 100], which was overruled by the Court [Document Number 103].  Those arguments are incorporated herein by reference.

-5-

FieldTurf's motion and brief carefully avoids any discussion of the foregoing definition of "outside counsel," despite the fact that it was FieldTurf who chose to define that term in the manner it is defined.  Instead, FieldTurf appears to rely on a vague claim that Mr. Lasko violated the "spirit" of the agreement.  Of course, FieldTurf has cited no legal authority for its contention that a mere violation of the "spirit" of a protective order entitles it to sanctions against SCG.

In fact, the relevant and controlling appellate decision, which FieldTurf has failed to cite, holds to the contrary. In *Grace v. Center For Auto Safety*, 72 F.3d 1236, 1237 (6th Cir. 1996) the Court stated:

> This is an appeal from orders imposing sanctions against defendant Clarence M. Ditlow and one of his lawyers, Mark Robinson, for an alleged violation of a protective order and for delaying a hearing thereon.
>
> The protective order, which had been issued in connection with discovery proceedings in a defamation action against Ditlow and his employer, prohibited disclosure of a certain deposition transcript to anyone outside a class of persons that included "the parties and their attorneys." Ditlow allowed a lawyer named Butler to receive a copy of the transcript. Although Butler was not one of the counsel of record in the defamation case, he had been providing unpaid legal assistance to the defendants. On the strength of this fact, Ditlow contends that Butler was not clearly shown to have been outside the class of persons to whom disclosure was permitted under the terms of the protective order.
>
> We agree. The protective order did not clearly and unambiguously prohibit Ditlow from giving the deposition to Butler, in our view, and the district court's finding to the contrary was incorrect in its legal aspect and clearly erroneous in its factual aspect. Because we conclude that the imposition of sanctions represented an abuse of discretion, and because there was no finding that the hearing was delayed through bad faith, we shall reverse both of the challenged orders.

The *Grace* decision stands for the proposition that there is no violation of a protective order concerning the handling of sensitive information unless it is "clear and unambiguous" that there was a violation.  In the present case, the Protective Order's definition of the class of persons entitled to receive FieldTurf's confidential information is crystal clear: only attorneys who are "not employees"

-6-

of SCG may receive the information.  Mr. Lasko and the attorneys in his law firm are not employees of SCG; therefore, the Protective Order permits such attorneys to receive and use such information.

FieldTurf's failure to discuss the definition of "outside counsel" in its brief and its failure to cite the controlling **Grace** decision, is a further indication of the frivolous nature of its combined motion.  The filing of such a motion is clearly sanctionable, and the Court is invited to sanction FieldTurf for this violation, at least to the extent of requiring FieldTurf to pay the attorney fees and costs incurred by SCG in responding to the motion.  This is particularly true where the circumstances of the timing of the motion reflect that the motion was a mere litigation tactic designed to attempt to intimidate SCG and to cause further delays in discovery.

SCG bent over backward to accommodate FieldTurf's perceived concerns over the handling of its perceived confidential information.[9]  SCG voluntarily revealed, through undersigned counsel, Mr. Lasko's ownership interest in SCG.  SCG was willing to negotiate a special procedure for the handling of this information, even though SCG knew there had been no violation of the Protective Order.  By agreeing to negotiate a procedure through Mr. Lindon for the handling of confidential information, SCG's was amenable to going beyond what it was legally obligated to do, frankly, to avoid the necessity of litigating collateral issues that distract from the merits of the case and to avoid any further delay in discovery.  SCG still remains willing (though to a lesser extent, given FieldTurf's proclivity to take advantage of SCG's generosity; the phrase "no good deed goes

---

[9] FieldTurf has failed to act in good faith in the labeling of allegedly confidential information.  For example, FieldTurf has applied the "Confidential – Attorneys' Eyes Only" designation to published marketing material and to material that was disseminated to third parties. Such material is not among the types of material traditionally recognized as confidential information by courts.

unpunished comes to mind) to agree to procedures that do not unreasonably restrict SCG's ability to litigate its claims and defenses.

### Disqualification

At the Status Conference before the Court, FieldTurf had exactly the same information that it had concerning Mr. Lasko's ownership interest in SCG as it did when it filed its motion for default and to disqualify counsel.  However, FieldTurf said nothing during the Status Conference about any concern it might have had about taking depositions in the presence of SCG counsel.  The only issue as to which FieldTurf expressed a concern in the presence of the Court was the handling of "Attorneys' Eyes Only" documents. One would think that if the concerns expressed in FieldTurf's brief were legitimate that FieldTurf would have brought up those concerns in the presence of the Court, instead of waiting to bring them up in a formal motion.

Furthermore, FieldTurf attempted to "notice"[10] the deposition of Mr. Lasko the very next day after the Status Conference.  It is scarcely worth mentioning that taking the deposition of an opposing attorney is a highly unusual procedure and fraught with many legal implications.  This reality suggests only two possibilities.  Either FieldTurf intended all along to seek the deposition of Mr. Lasko, but intentionally sandbagged the Court by avoiding any mention of that fact at the Status Conference, or the following day's attempt to notice Mr. Lasko's deposition was a mere litigation tactic that occurred to FieldTurf immediately after the Status Conference which was designed merely to harass SCG and its counsel and force both to incur unnecessary time and expense.  Neither possibility is worthy of counsel attempting to aspire to the professionalism demanded of attorneys

---

[10] The procedure of noticing a deposition, without service of a subpoena, is limited to parties. Mr. Lasko is not a party.

practicing before the federal courts.  Further, regardless of which possibility is true, it is clear from the sequence of events that FieldTurf never had any intention of negotiating in good faith as to its concerns over the handling of confidential information.

The disqualification of counsel is a serious and rare procedure.  Disqualification of an attorney is a drastic measure which should not be imposed unless absolutely necessary. ***Kala v. Aluminum Smelting & Refining Co., Inc.*** (1998), 81 Ohio St.3d 1, 6.  Aside from the potential for abuse by overly-litigious parties such as FieldTurf, disqualification interferes with a client's right to choose counsel. ***Manning v. Waring, Cox, James, Sklar & Allen*** (C.A. 6, 1998, 849 F.2d 22, 224.  Motions to disqualify counsel "should be viewed with disfavor because of their potential to interfere with a defendant's right to choose his own counsel and their strong potential for abuse." ***United States v. Poulsen*** (2006), S.D. Ohio Case No. CR2-060129; see also ***Amos v. Cohen*** (2005), 156 Ohio App.3d at 492, 496.  This concern over the right of a party to choose its own counsel is present in this case.  The affidavit of SCG (**Exhibit C** hereto) makes it clear that Mr. Lasko and his law firm are SCG's choice of primary counsel in the present case.  While FieldTurf argues that attorney James Lindon can fulfill that role, such position  is disingenuously self-serving on Field Turf's part.  Mr. Lindon serves a specialized role in this case as SCG's counsel.  It is arrogant and inappropriate of FieldTurf to presume that SCG should be content with FieldTurf's choice of counsel for it.

Further, it is well settled in Ohio that an opposing party generally lacks standing to object to counsel on the ground of a conflict of interest. ***Morgan v. North Coast Cable Co.*** (1992), 63 Ohio St.3d 156,159. "As a general rule, a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship." Id.

A person who seeks disqualification of counsel for a party bears a heavy evidentiary burden. See *A.B.B. Sanitec West v. Weinsten*, 2007-Ohio-2116.  In *A.B.B. Sanitec West*, the Appellate Court reversed the decision of the trial court to disqualify counsel, holding that it was an abuse of discretion to disqualify counsel where the moving party had made no evidentiary showing that the attorney's testimony was needed as to "disputed" facts.  This decision is an apt precedent for the case at bar, as FieldTurf has failed to make any evidentiary showing whatsoever that Mr. Lasko's testimony is necessary as to disputed facts or that FieldTurf has suffered any specific harm.  If called to testify, Mr. Lasko would testify as to his ownership interest in SCG and also testify as to his appropriate handling of "Attorneys' Eyes Only" documents by the class of persons who are entitled to receive them under the express terms of the Protective Order.  These facts are not disputed.

*Morgan Engineering v. Cascade Oil Co.* (Nov. 11, 1982), N.D. Ohio Case No. C81-931A.3 holds that is not for the court to upset a party's choice of counsel when the facts do not clearly indicate that a disqualification is necessary.  "The party seeking disqualification must show that they will call the opposing counsel as a witness and that his testimony would be prejudicial to that attorney's client.  The burden of showing prejudice is on the party seeking disqualification. Testimony is 'prejudicial' if it would contradict the factual assertions otherwise made on behalf of the client." Id.  As discussed supra, there is no risk that counsel for SCG would testify in a manner that contradicts their client.  Further, there is no need for such testimony by SCG's attorneys.

Perhaps even more astonishing, FieldTurf relies for its arguments for disqualification upon the terms of the Ohio Code of Professional Responsibility.  However, that Code no longer exists. It was replaced on February 1, 2007 with a wholly new code of conduct governing Ohio attorneys known as The Ohio Rules of Professional Conduct.

-10-

Notwithstanding that the Code relied upon by FieldTurf no longer exists, the case law cited by FieldTurf that interprets the former Code, to the extent such decisions may continue to have effect, have not been analyzed by FieldTurf. The case cited by FieldTurf generally speaks to the situation where an attorney previously represented a client that is now the opposing party, or cases where the testimony of the attorney is needed and cannot be elicited from any other witnesses. Such a showing has not been made by FieldTurf.

## Default

FieldTurf seeks imposition of the harshest potential penalty of default for what it gratuitously terms "serious discovery violations." Yet FieldTurf is not able to point to any violation of any discovery request to SCG. As noted, SCG has objected to discovery requests that seek disclosure of the ownership structure of SCG, as this information is not relevant to any claim or defense in the case. SCG had the right to interpose a good faith objection to these discovery requests. FieldTurf has not cited any legal authority that the assertion of an objection constitutes an evasion of discovery.

If the mere assertion of an objection to a discovery request is a discovery violation, then FieldTurf is guilty in spades, for it has asserted the attorney-client privilege generously as a ground for virtually every discovery request put to it by SCG.

To the extent FieldTurf relies on an asserted violation of the Protective Order as ground for default judgment against SCG, its motion must be denied without further discussion as the ***Grace*** decision, 72 F.3d at 1237, supra, makes clear that there has been no violation of the Protective Order.

In **Bank One of Cleveland, N.A. v. Abbe**, 916 F.2d 1067 (6th Cir. 1990), the Court noted that several factors need to be considered when a default is sought for failure to cooperate with discovery. These include: whether the adversary was prejudiced by the dismissed or defaulting party's failure to cooperate in discovery; whether the dismissed or defaulted party was warned that failure to cooperate could lead to dismissal or default; and whether less drastic sanctions were imposed or considered before dismissal or default was ordered. Id. at 1073.  The Court also noted that default is a sanction of last resort. Id.

In the present case, FieldTurf has not demonstrated any failure of SCG to cooperate with discovery.  In fact, pursuant to this Court's order of September 26, 2007, SCG has supplemented its discovery responses.  Additionally, no alternatives to default have been proposed or discussed, either by FieldTurf or the Court.  FieldTurf has failed to show any prejudice whatsoever from any perceived discovery violations.  In light of the foregoing, even if sanctions were theoretically warranted, a default judgment is not an appropriate sanction.

Respectfully submitted,

/s/ Thomas J. Vozar
_____

Ronald H. Lasko (#0023414)
Thomas J. Vozar (#0037417)
Lasko & Associates Co. L.P.A.
1406 West Sixth Street, Suite 200
Cleveland, Ohio 44113-1300
Telephone:      216-574-2600
Facsimile:      216-574-2800
E-Mails:      rlasko@laskolpa.com
             tvozar@laskolpa.com

James L. Lindon, Ph.D (#0068842)
Lindon & Lindon, LLC
1250 Linda Street
Rocky River, Ohio 44116
Telephone:      440-333-0011
Facsimile:      419-710-4925
E-mail:      JLindon@LindonLaw.com

Attorneys for Defendant
Sports Construction Group, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2007 a copy of the foregoing Sports Construction Group, LLC's Brief in Opposition to Fieldturf's Combined Motion and Memorandum in Support of Default Judgment Against Defendant Sports Construction Group, LLC In the Alternative for Disqualification of Counsel was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  This pleading may be accessed through the Court's electronic filing system.

/s/ Thomas J. Vozar_____
One of the Attorneys for Defendant
Sports Construction Group, LLC