**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FIELDTURF USA, INC., ET AL. | ) | |
| | ) | CASE NO.: 1:06CV2624 |
| Plaintiffs, | ) | |
| | ) | Judge Patricia A. Gaughan |
| v. | ) | |
| | ) | **FIELDTURF'S SUR-SUR-REPLY IN** |
| SPORTS CONSTRUCTION GROUP, LLC, | ) | **SUPPORT OF ITS MOTION FOR DEFAULT OR** |
| | ) | **DISQUALIFICATION OF** |
| Defendant. | ) | **COUNSEL** |
| | ) | |

**I.  INTRODUCTION**

FieldTurf appreciates that the briefing on its motion for default or disqualification is extended so it will address only a few of the problems extant with the position of SCG and Mr. Lasko's counsel presented in Sur-Reply, Doc. No. 156.

**II.  THE STATE COURT PROTECTIVE ORDER MAY BE CONSIDERED WHEN DETERMINING CONTUMACIOUS CONDUCT**

SCG suggests that FieldTurf somehow is asking this Court to divest Judge Gaul of his authority to determine contempt of the protective order he entered. This is not true. FieldTurf wants Judge Gaul to make his own determination.[1]  FieldTurf merely asks this Court to take into consideration, Mr. Lasko's and SCG's conduct with respect to that Order to help illuminate their lack of candor and trustworthiness as a whole. *See, e.g., Biocore Med. Tech., Inc.*, 181 F.R.D. 660, 675 (D. Kan. 1998) (District Court disqualified the attorney for the Defendant for violating the protective order issued in the case by providing information and deposition testimony to a third party for use in a completely different action *reasoning that, if the Defendant's attorney*

---

[1] Oddly, even in view of its arguments, SCG and Mr. Lasko admit that Judge Gaul is indeed awaiting a ruling by this Court before he proceeds further on the motion for default and disqualification before him.  Doc. No. 156, p.15.

*had violated the protective order in such a manner before, there was no reason to suspect he would not violate the protective order again.*) (Emphasis added).

In addition, the State Court is a conduit for FieldTurf's information in discovery to which Mr. Lasko has access, and this Court has jurisdiction over *both* Mr. Lasko *and* SCG with respect to protection of FieldTurf's information.  *See* Doc. No. 99, §§ II(G), III(B)(1).

**III.  THE ISSUE WITH BOTH THE FEDERAL & STATE COURT PROTECTIVE ORDERS IS ACCESS TO CONFIDENTIAL INFORMATION, NOT "REVIEWING" IT**

SCG and Mr. Lasko state "the State Court Protective Order is not violated just because Mr. Lasko is 'secretary' of SCG.  A violation requires *both* officer status *and* review of documents designated as 'Attorneys' Eyes Only.'  Because there has been no review of documents marked Attorneys Eyes Only produced in the State Court action, it is impossible for Mr. Lasko to have violated the State Court Protective Order."  Sur-Reply, Doc. No. 156, p. 11.

This statement is: (1) completely untrue as to both of the protective orders at issue; and (2) more than likely untrue as to whether or not "Attorneys' Eyes Only" ("AEO") information was actually "reviewed," by Mr. Lasko in the State Court case.

First, neither the State nor Federal Protective Orders at issue prohibit "reviewing" sensitive documents.  Instead, both clearly and unambiguously restrict "access" and "disclosure" of AEO.  *See* Doc. No. 46, ¶¶ 7, 7.3 and Exhibit 14 to Doc. No. 99, ¶¶ 7, 7.3.  The purpose of protective orders is to allow discovery to move forward while preventing intentional or even accidental disclosure (*i.e.*, access) of a party's highly sensitive information to a competitor or potential competitor.  Ironically, preventing inappropriate access avoids the self-serving arguments that one can make after-the-fact that while he had access, he did not "review" the AEO information.

2

Second, it is not disputed that Mr. Lasko had access to AEO information for over five months in the State Court case and over eight months in the Federal Court case. Mr. Lasko is the only partner at Lasko & Associates (which has only two associates), he is the lead attorney on both the Federal and State Court cases, and he has been very active in discovery. *See* Lasko Depo., pp. 16-17, filed as Exhibit No. 3 to FieldTurf's Reply Brief (Doc. No. 154). Based upon the foregoing, it makes absolutely no sense that he has prepared for trial and further discovery by avoiding AEO information. In addition, this defense is especially unlikely since in the federal case, Mr. Lasko's excuse for violation is that he had a right to see AEO information because he was not an "employee," while one of his excuses for violating the State Court Order is that he did not read it and thought it was the same as the federal court order; meaning that he must have thought he was also not prohibited from "reviewing" AEO information in the State Court case. *See* Doc. No. 156, at § II.

Third, Mr. Lasko's Affidavit is submitted to this Court to support the fact that Mr. Lasko did not review AEO information in the State Court case. *See* Lasko's Affidavit, at ¶ 22, filed as Exhibit A to SCG's Sur-Reply (Doc. No. 156); *see also* Lasko Depo., p. 131. Courts, however, routinely reject such self-serving statements such as Mr. Lasko's statements. "If sworn statements by the parties involved in the alleged conflict that they didn't disclose any confidential information were the litmus test for determining conflicts of interest, then conflicts of interest undoubtedly would be nonexistent." *Packard Bell NED, Inc. v. Aztech Systems Ltd.*, 2001 U.S. Dist. LEXIS 11194 at *23 (C.D. Cal. 2001).[2]

---

[2] *See also Biocore Med. Tech., Inc.*, 181 F.R.D. 660, 675 (D. Kan. 1998) (stating that "'self-serving protestations' [of counsel] do not help assuage the fears of … the Court that [the former employee] indeed revealed confidential information"), *aff'd*, 348 F.3d 1163 (10th Cir. 2003); *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994) ("Self-serving affidavits of counsel and others are not helpful because of their undeniable interest in preserving any tactical advantage they may have garnered."); *MMR/Wallace Power & Industrial, Inc. v. Thames Assoc.*, 764 F. Supp. 712, 726-27 (D. Conn. 1991) ("Moreover, given their undeniable interest in preserving any tactical advantage they may have garnered, the court does not find availing []assertions that no confidential and/or

Defendant's submission of Mr. Lasko's Affidavit at this time is both unfair, and its credibility is further suspect, because when he was deposed at the Court's insistence, Mr. Lasko could not remember whether or not he had reviewed AEO information in the State Court action:

> Q: Did you review documents in the state court case against Mr. Squire [*sic*] and Mr. Kanzek?
>
> A: I don't recall if I did or did not review those documents.
>
> Q: If you don't know if you recall, then likewise you wouldn't recall what their designation was?
>
> A: I don't recall whether or not I reviewed those documents.
>
> Q: Okay.

Lasko Depo., p. 131:14-23, filed as Exhibit 3 to FieldTurf's Reply Brief (Doc. No. 154).

Finally, the veracity of Mr. Lasko's position that he did not "review" AEO information in the State Court case should be viewed in light of him asking his own client to swear under penalty of perjury that he had read something that he did not – *i.e.*, the State Court Protective Order. *See* FieldTurf's Reply Brief, at § II(H), p. 12 (Doc. No. 154).

**IV.  SCG AND MR. LASKO IMPROPERLY CITE THE STIPULATED PROTECTIVE ORDER AS THE SCOPE OF THIS COURT'S ORDER DEMANDING COOPERATION, RATHER THAN FIELDTURF'S MOTION.**

In its Reply brief (Doc. No. 154, § II(G)), FieldTurf documented a host of contumacious conduct committed by Mr. Lasko and his counsel in violation of this Court's Order (Doc. No. 138), in which the Court stated that "[t]he Court expects the parties and Attorney Lasko to cooperate fully in this matter and expects the deposition to reveal all information *relevant to the motion for default*." (Emphasis added).

---

privileged information was consciously unconsciously revealed to them during their interview … [t]o the contrary, these self-serving protestations fail to clearly and effectively rebut the presumption that confidential information was exchanged …").

4

In an attempted defense of their actions, in their Sur-Reply (Doc. No. 156), Mr. Lasko and SCG repeatedly and improperly cite the Protective Order as the metes and bounds for the scope of proper inquiry regarding their violation of this Court's Order compelling Mr. Lasko's deposition. This appears to be an intentional mistake as this proposed scope of inquiry is much narrower than what this Court's Order actually demanded.

At the deposition, Mr. Gurbst stated he read the Order. *See* Lasko Depo., pp. 8-9, filed as Exhibit 3 to FieldTurf's Reply Brief (Doc. No. 154). Mr. Gurbst was also advised of the application of the proper scope at the deposition of Mr. Lasko, in response to his improper restrictions on the scope of inquiry. In view of Mr. Gurbst's objections, Mr. Lake explained to Mr. Gurbst that "[t]he Judge's order says that the deposition will be taken and help will be given on all the issues in our motion – all the issues raised by our motion for default and to disqualify. That motion is based on, among other things, Mr. Lasko's interest in the defendant. It's also based on a failure to communicate that interest in a timely manner. It's also premised on the letter and spirit of the protective order." Lasko Depo., p. 83:13-23.

### V. THE "FACTS" ALLEGED IN DEFENSE APPEAR TO BE ANOMALOUS AND TO HAVE SPRUNG FROM THE SLOWLY UNFOLDING DISCLOSURES BY SCG RATHER THAN REALITY.

Many factual anomalies appear in SCG's defense arguments, including those submitted in the Sur-Reply (Doc. No. 154). FieldTurf believes that it will be helpful to the Court to consider the following to understand the reason for the apparent anomalies. It is critical to note that these events unfolded in a stepwise fashion.

First, Mr. Lasko and SCG were confronted with a violation of this Court's Protective Order because on September 6, 2007, Mr. Vozar stated to the Court that Mr. Lasko had an 8% interest in SCG. Without any discovery on this issue – briefing ensued in this case where both

FieldTurf and SCG briefed the issue with this "fact" in mind. SCG's defense was simply that the Protective Order only prohibited "employee" access to AEO information but did not expressly prohibit shareholders from receiving AEO information. Mr. Lasko attested that he was not an "employee" of SCG. Then, the first anomaly popped up.

Long after Mr. Vozar filed SCG's opposition brief (Doc. No. 104), he submitted a surprise affidavit of Mr. Franks (Doc. No. 134) stating that, Mr. Lasko was not even a shareholder of SCG but merely an 80% owner of Vale Investments Ltd. ("Vale"), which in turn owned 10 units of SCG. Given Mr. Lasko's and SCG's defense – this revelation submitted *late* in the briefing and *without leave* to file same appeared to be anomalous if not unnecessary to their chosen defense. The answer to this seeming anomaly is the State Court case and its protective order.

Subsequent to the pursuit of sanctions in this case – lead counsel for the Defendants in the State Court case had begun to press into the issue of violations of the Protective Order issued there. The State Court Protective Order expressly recites *shareholders* of a party as one of those entities who may *not* receive AEO information. Thus, if Mr. Lasko owned 8% of SCG, then he would be in express literal violation even under SCG's reading of the State Court Protective Order. Hence, SCG and Mr. Lasko, in a stepwise-fashion, revealed the existence of Vale. In view of his ownership in SCG, indirectly through his ownership in Vale, SCG and Mr. Lasko had what they hoped would be a defense to a violation of <u>both</u> Protective Orders, *i.e.*, Mr. Lasko was neither an employee nor a shareholder of SCG. However, this defense was later to be upset.

Upon subsequent compelled testimony from Mr. Lasko that he was also an officer of SCG, his defense to literal violation of the State Court Protective Order fell apart due to other language of the State Court protective order which also expressly prohibits <u>officers</u> of a party

6

from access to AEO information.  This single step-wise revelation gave rise to many more anomalies.

The next resolved anomaly is obvious – why have SCG and Mr. Lasko fought so hard against revealing sought-after information as to SCG's corporate organization and ownership?

Another anomaly resolved by this unfolding background (a defense of zero violation of either federal or state orders) is why Mr. Lasko, in charge of prosecuting both this case and the State Court action, admits to "reviewing" AEO information produced only in this case while totally neglecting AEO information produced in the State Court case – even though he swears that he thought the respective protective orders read the same?  See Lasko's Affidavit attached as Exhibit A to Doc. No. 156, ¶ 9.

An even more troubling anomaly resolved by this unfolding background (related to one of many defenses arguing an innocent violation if-you-will) is why: (1) Mr. Lasko now argues that he did not receive a draft of the State Court protective order; (2) he did not ask for another copy of the draft order;  (3) he did not read the order before or even *after* it was entered by the State Court; and, (4) he now admits putting his client at risk for perjury by having him sign an undertaking under penalty or perjury that he, Mr. Franks, had read the State Court Order in its entirety, even though neither he nor his lawyer, Mr. Lasko, had ever even seen the document. Doc. No. 154, § II(H).

In short, FieldTurf believes this matter in its entirety may have been avoided but for the stepwise "unfolding" nature of disclosures in this case.

**VI.    CONCLUSION**

For the above reasons, and given the full record in this matter, FieldTurf asks this Court to grant its motion for default judgment against SCG or, in the alternative, disqualify attorney Ronald Lasko and his law firm from representing SCG in this litigation.

                    Respectfully submitted,

Date:  November 27, 2007        /s Micheal D. Lake
Jody L. Factor, Esq.
Micheal D. Lake, Esq.
Nicholas S. Lee, Esq.
FACTOR & LAKE, LTD
1327 W. Washington Blvd.
Suite 5G/H
Chicago, IL  60607
Phone: (312) 226-1818
Facsimile: (312) 226-1919

Co-Counsel:

H. Alan Rothenbuecher (0041883)
Schottenstein, Zox & Dunn Co., LPA
US Bank Centre at Playhouse Square
1350 Euclid Avenue, Suite 1400
Cleveland, OH 44115
Phone: 216-621-6501
Facsimile: 216-621-6502

*Attorneys for Plaintiffs*
*FieldTurf USA, Inc. and FieldTurf Tarkett Inc.*

## CERTIFICATE OF SERVICE

      I, Micheal D. Lake, hereby certify that on this 27th day of November 2007, a copy of the foregoing document entitled, **"FIELDTURF'S SUR-SUR-REPLY IN SUPPORT OF ITS MOTION FOR DEFAULT OR DISQUALIFICATION OF COUNSEL"** was filed electronically via the Court's ECF/CM System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

      s/ Micheal D. Lake
Micheal D. Lake
FACTOR & LAKE, LTD.
1327 W. Washington Blvd., Suite 5G/H
Chicago, Illinois 60607
Phone:  (312) 226-1818
Fax:  (312) 226-1919
Email:  mlake@factor-lake.com

9