UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Field Turf USA, Inc., et al., | ) | CASE NO. 1:06 CV 2624 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Sports Construction Group, LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon seven motions: (1) plaintiffs' motion for default

judgment and for dismissal of defendant's counterclaims or, in the alternative, for

disqualification of counsel (Doc. 99); (2) plaintiffs' motion for leave to file a sur-surreply in

support of their motion for default (Doc. 158); (3) defendant's motion for a protective order

regarding the deposition of Attorney Lasko (Doc. 84); (4) plaintiffs' motion to compel

discovery regarding patent infringement or, in the alternative, for a protective order (Doc.

130); (5) defendant's motion to compel discovery and for attorneys' fees and costs (Doc. 83);

1

(6) plaintiffs' motion for a protective order regarding defendant's third party subpoenas (Doc. 126); and (7) plaintiffs' motion to compel responses to document requests (Doc. 137).

For the reasons that follow, plaintiffs' motion for default and dismissal or for disqualification is GRANTED in PART and DENIED in PART.  Plaintiffs' motion for leave to file a sur-surreply is GRANTED.  Defendant's motion for a protective order regarding the deposition of Attorney Lasko is MOOT.  Plaintiffs' motion to compel patent infringement discovery and for a protective order is MOOT.  Defendant's motion to compel discovery and for attorneys' fees and costs is DENIED.  Plaintiffs' motion for a protective order regarding third party subpoenas is GRANTED.  Finally, plaintiffs' motion to compel responses to document requests is GRANTED in PART and DENIED in PART.[1]

### **FACTS**

FieldTurf USA, Inc. and FieldTurf Tarkett Inc. (collectively "FieldTurf" or "plaintiffs") initiated this suit, alleging that Sports Construction Group, LLC ("SCG" or "defendant") infringed certain claims of U.S. Patent No. 6,551,689 ("the '689 Patent") and U.S. Patent No. 6,746,752 ("the '752 Patent").[2]  Both the '689 Patent and the '752 Patent are

---

[1]

> The Court notes at the outset that Attorney Lasko is represented in this matter by Richard Gurbst at Squire, Sanders & Dempsey L.L.P. Plaintiffs have not asked the Court to recuse itself from this matter, but the Court has made its own independent assessment and finds that there is no need for recusal in that Squire Sanders is not representing a party to this action and has no financial interest in the outcome of this lawsuit by virtue of its representation of Attorney Lasko as a deponent.

[2]

> Plaintiffs have since voluntarily dismissed, without prejudice, the count alleging infringement of the '689 Patent.

entitled "Synthetic Grass with Resilient Granular Top Surface Layer."  The patents are generally directed to a synthetic grass assembly comprising a pile fabric with a flexible sheet backing, rows of upstanding synthetic ribbons, and an infill layer between the ribbons.  SCG, in response, asserted seven counterclaims: non-infringement, invalidity, deceptive trade practices, tortious interference with business and pre-contractual relations, violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, violation of 15 U.S.C. § 2, and common law unfair competition.[3]

Given the proprietary nature of some of the information to be exchanged by the parties during discovery, the parties entered into, and the Court approved, a Stipulated Protective Order that provides a mechanism for designating documents and information as "confidential" or "confidential - attorneys' eyes only."  (Doc. 46)  The Stipulated Protective Order ("SPO"), entered into in April 2007, provides that "attorneys' eyes only" material may be disclosed only to the receiving party's "outside counsel."  "Outside counsel" is defined as "attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action."  The term "employees" is not defined in the SPO.  The "attorneys' eyes only" provision was included to ensure that highly sensitive information belonging to either party does not find its way into the hands of the other, because they are competitors in the synthetic turf market.

The following motions are currently before the Court: (1) plaintiffs' motion for default judgment and dismissal of defendant's counterclaims or, in the alternative, for disqualification

---

[3]

> Defendant later voluntarily dismissed its antitrust counterclaim (for violation of 15 U.S.C. § 2) without prejudice.

of defendant's counsel for, *inter alia*, violation of the SPO; (2) plaintiffs' motion for leave to file a sur-surreply in support of the motion for default; (3) defendant's motion for a protective order regarding the deposition of Attorney Lasko; (4) plaintiffs' motion to compel discovery regarding patent infringement and for a protective order; (5) defendant's motion to compel discovery and for attorneys' fees and costs; (6) plaintiffs' motion for a protective order regarding third party subpoenas; and (7) plaintiffs' motion to compel responses to document requests.  Each of the motions, except for the motion for leave, is opposed.

### **DISCUSSION**

*Plaintiffs' Motion for Default and Dismissal or for Disqualification* (Doc. 99)

Plaintiffs move for default judgment against defendant and for dismissal of all of defendant's counterclaims.  In the alternative, plaintiffs seek disqualification of defendant's attorney Ronald H. Lasko and Attorney Lasko's law firm, Lasko and Associates Co. L.P.A. (the "Lasko firm").  The grounds for plaintiffs' motion are several.  Plaintiffs argue that SCG, Attorney Lasko and the Lasko firm:  (1) misrepresented that Attorney Lasko was "outside counsel" as that term is defined in the Stipulated Protective Order; (2) refused to allow proper discovery into the ownership structure of SCG in an attempt to hide the fact that Attorney Lasko was not "outside counsel" and have displayed a lack of cooperation and candor; (3) violated the SPO; (4) violated a protective order entered in a related state court action; (5) misappropriated plaintiffs' trade secrets; (6) violated this Court's October 31, 2007 Order directing the parties and counsel to cooperate fully in discovery into the default issue; and (7) violated this Court's October 24, 2007 Order directing SCG to suspend execution of its third party subpoenas.  This dispute has unraveled slowly over several months.  The essential facts

4

follow.

Beginning in January 2007, plaintiffs sought discovery from SCG on its ownership and corporate structure.  SCG asserts such ownership information is "privileged and proprietary."  Early in 2007, plaintiffs also proposed the Stipulated Protective Order, which governs how the parties are to designate trade secret and other confidential information produced during discovery.  SCG and Attorney Lasko resisted entry of the protective order, but relented when plaintiffs made a motion to the Court.  The SPO was entered as an Order of this Court in April 2007.  Pursuant to the SPO, plaintiffs produced highly sensitive confidential, proprietary, and trade secret information to Attorney Lasko under the "attorneys' eyes only" designation.

At some point during 2007, plaintiffs and their counsel began to suspect that Attorney Lasko and the Lasko firm had more than an outside counsel relationship with SCG.  SCG and Attorney Lasko refused to disclose any information regarding the relationship, asserting it was irrelevant despite the SPO's provisions restricting who was to have access to confidential information produced by FieldTurf.  After multiple attempts to obtain this information, plaintiffs raised the issue at a status conference between the parties and the Court in September 2007.  At that time, Thomas Vozar, an associate of the Lasko firm, made known that Attorney Lasko has an 8% ownership interest in SCG.  Attorney Lasko was present at this status conference but did not offer any information to the Court regarding his ownership interest in or other relationship with SCG.  Attorney James Lindon of Lindon & Lindon, LLC, patent counsel to defendant SCG, was also present at this status conference and remained silent on the issue of Attorney Lasko's relationship with SCG.  Plaintiffs' motion for default

5

and dismissal or disqualification followed.

In opposition to the motion, Attorney Lasko submitted an affidavit to the Court stating only that he was not an "employee" of SCG.  The result, Attorney Lasko argued, is that he is properly considered "outside counsel" under the SPO and, therefore, has not violated the SPO by receiving "attorneys' eyes only" documents from plaintiffs.  Two weeks later, however, SCG and its counsel provided additional insight into the nature of Attorney Lasko's ownership interest via a supplemental opposition to the motion for default.  This supplement contained the affidavit of Paul Franks, President of SCG.  Mr. Franks stated that SCG is a limited liability company comprised of members.  One such member is Vale Investments, Ltd. ("Vale").  Attorney Lasko has an 80% financial interest in and is a member of Vale, and Vale owns 10% of SCG.  This is how Attorney Vozar calculated that Attorney Lasko possesses an 8% interest in SCG.  Vale's membership in SCG is "Class B Membership." SCG's Operating Agreement provides that Class B members possess an "economic interest" in SCG.  According to Mr. Franks affidavit, the definition of "economic interest" excludes "the right to vote on, consent to or otherwise participate in any decision of the Members."[4]

On the same day that SCG submitted its supplemental opposition, Attorney Vozar submitted a letter to the Court.  In his letter, Attorney Vozar states he is writing to correct the misstatement he made during the September 2007 status conference with the Court, during which he characterized Attorney Lasko's ownership interest in SCG as that of a shareholder. Attorney Vozar goes on to write that he had "no reason" to be fully informed of the facts "as there was no indication that Mr. Lasko's ownership interest, if any, was a legitimate issue in

---

[4]

        Again, these statements were not made personally by Attorney Lasko.

the case."  Attorney Vozar made this statement despite plaintiffs' repeated requests for this

information and at least one email, dated August 29, 2007, in which plaintiffs' counsel

explained their concern about the disclosure of FieldTurf's confidential information to an

SCG-insider, namely Attorney Lasko.

Given these new revelations, plaintiffs moved for and were granted an extension of

time to file their reply in support of the motion for default.  The Court also granted plaintiffs'

request to depose Attorney Lasko to avoid any risk that still more information would be

revealed after the briefing on the motion for default was complete.  Anticipating that new

evidence derived from the deposition would be presented in plaintiffs' reply, the Court

prospectively granted defendant leave to file a surreply.[5]

Much to the Court's dismay, the deposition of Attorney Lasko did, in fact, reveal

additional information regarding his relationship with SCG.  Attorney Lasko testified that he

is the Secretary of SCG and has been since the company's founding in 2004.  He also has

"signatory rights" to SCG's bank accounts.  It also appears that Mr. Franks' affidavit and

Attorney Vozar's letter to this Court, in which they explained that Class B members do not

have any right to vote on any decision of the Members of SCG, were not entirely accurate.

SCG's Operating Agreement provides that Class B Members - such as Vale, the entity that is

80%-owned by Attorney Lasko - do enjoy a vote to resolve a deadlock and when any

proposed action of the Members or the Manager of SCG adversely affects the rights of the

Class B Members.  SCG's Ownership Agreement further provides that Class B Members shall

---

[5]

>  Given the fact that plaintiffs have now deposed Attorney Lasko,
>  SCG's motion for a protective order (Doc. 84) is moot.

have the right to "participate in any discussion prior to a vote on any matter affecting the Company or its business."

Moreover, Attorney Lasko is the President of Vale, and two of Attorney Lasko's employees at the Lasko firm own the remaining 20% of Vale. Vale was created solely for the purpose of owning an interest in SCG. Defendant SCG and the Lasko firm reside at the same business address. And, SCG holds a promissory note from Vale for over $45,000. This note is due February 17, 2009. Vale has received, and expects to continue to receive, distributions from SCG as payment on the note.[6]

In addition to the above misrepresentations and failures to disclose, plaintiffs argue that default and dismissal or disqualification are warranted because SCG and Attorney Lasko have violated this Court's October 24, 2007 Order (Doc. 131). The Order related to defendant's issuance of over 40 third party subpoenas *duces tecum*. While the issue of the subpoenas is discussed more fully below in connection with plaintiffs' motion for a protective

---

6

> It seems that SCG and Attorney Lasko have refused to produce documents evidencing Vale's corporate structure, despite a subpoena from plaintiffs for these documents and the Court's previous directive that all information relevant to the motion for default be disclosed. The information gathered regarding Vale was learned at the deposition of Attorney Lasko. Plaintiffs argue that this failure to produce Vale documents amounts to a violation of the Court's October 31, 2007 Order (Doc. 138) directing Attorney Lasko and SCG to fully cooperate in Attorney Lasko's deposition. Plaintiffs also point out that Mr. Lasko's attorney made speaking objections and instructed Mr. Lasko not to answer questions on grounds other than privilege. Mr. Lasko's attorney also interrupted the deposition at several times to rephrase the deposing attorney's questions to Mr. Lasko, after which Mr. Lasko answered his attorney's - rather than the deposing attorney's - questions. While not proper conduct, the Court declines to find a direct violation of the Court's October 31 Order.

order, it is appropriate to note here that defendant did not comply with the October 24 Order.

The Court ordered defendant to inform all third parties that production was to be held in

abeyance until the plaintiffs' motion for a protective order was resolved.  However, merely

one week after the Order was issued, defendant issued eight additional subpoenas without

simultaneously informing these newly-subpoenaed parties that there was a court order in

place that precluded them from responding to the subpoenas.  Defendant has subsequently

withdrawn these additional eight subpoenas.[7], [8]

The Court has the power to dismiss a claim or enter judgment against a party for

failure to comply with discovery orders, including protective orders.  Fed. R. Civ. P.

37(b)(2)(C); *see also Coleman v. Am. Red Cross*, 979 F.2d 1135, 1141 (6th Cir. 1992)

("When a party violates a protective order, a district court may impose appropriate sanctions

---

[7]

> Plaintiffs also allege that Attorney Lasko has violated a protective
> order in a related state court action in which SCG sued two of
> FieldTurf's independent sales representatives in the Ohio Court of
> Common Pleas. This Court has no authority to enforce the state
> court's protective order and, so, it will leave resolution of this
> question to the state court except to note that Attorney Lasko's
> assertion that he had no responsibility to read the proposed stipulated
> state court protective order before it was submitted to the court
> because he was not required to sign it lacks credibility.  Finally,
> Attorney Lasko's argument that he does not violate the protective
> order by merely *receiving* "attorneys' eyes only" information is in
> direct conflict with the plain language of the protective order, which
> prohibits *disclosure* of such information to all but outside counsel.
> Nowhere does the protective order distinguish between receipt of
> information and review of that information.

[8]

> Plaintiffs seek leave to file a sur-surreply.  (Doc. 158)  That motion
> is hereby granted and plaintiffs' arguments made therein have been
> fully considered by the Court.

to remedy the violation.  ...  In some cases, even a default judgment may be appropriate.").

The "most severe in the spectrum of sanctions provided by statute or rule must be available to

the district court in appropriate cases, not merely to penalize those whose conduct may be

deemed to warrant such a sanction, but to deter those who might be tempted to such conduct

in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S.

639, 643 (1976).  The Court also has the power, under Rule 37, to assess attorneys' fees and

costs to the offending party or its counsel.  *Roadway Express v. Piper*, 447 U.S. 752, 763

(1980) (superceded in part by 28 U.S.C. § 1927, which permits attorneys' fees to be assessed

against a party's counsel for vexatious and unreasonable multiplication of proceedings).

The Court considers four factors on a motion to dismiss or for default under Rule 37:

(1) whether the party's failure to comply is due to willfulness, bad faith, or fault; (2) whether

the moving party was prejudiced by the offending party's conduct; (3) whether the offending

party was warned that failure to cooperate could lead to dismissal; and (4) whether less

drastic sanctions were imposed or considered before dismissal was ordered.  *See, e.g., United*

*States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).  No one factor is dispositive.  *Id.*  The

Court has the power to order dismissal even in the absence of expressly considering lesser

sanctions; a motion to dismiss or for default is sufficient to put the offending party on notice

that such a sanction is being considered.  *See id.*  Dismissal will be proper if the record

demonstrates delay or contumacious conduct.  *Id.*  The offending party has the burden to

show its failure to comply was due to its inability rather than willfulness or bad faith.  *Id.*

Dismissal is presumptively appropriate if the party has the ability to comply with a discovery

order but has not.  *Id.*

10

The Court also has the inherent power to sanction attorneys and parties before it for contempt and abusive litigation practices. *Roadway Express*, 447 U.S. at 764-65; *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986). These powers include the power to dismiss a case or to assess attorneys' fees for acting in bad faith, vexatiously, wantonly, or for oppressive reasons. *Roadway Express*, 447 U.S. at 766. Moreover, disqualification of counsel is an appropriate sanction for a breach of ethical duties. *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp.2d 863, 865 (S.D. Ohio 2002). The power to disqualify an attorney, or attorneys, from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it. *Id.* Courts have broad but not unfettered discretion in ruling on motions to disqualify counsel. *Id.*; *Moses v. Sterling Commerce, Inc.*, 122 Fed. Appx. 177, 183 (6th Cir. 2005). "Courts must be vigilant in reviewing motions to disqualify counsel as the ability to deny one's opponent the services of capable counsel is a potent weapon that can be misused as a technique of harassment." *Id.* (internal citations and quotations omitted). A court may disqualify an attorney "when there is a reasonable possibility that some specifically identifiable impropriety actually occurred" and "where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* at 184; *SST Castings*, 250 F.Supp.2d at 865.[9]

With these legal principles in mind, the Court has scrutinized all of the evidence

---

9

The Court of Appeals for the Federal Circuit applies the law of the regional circuit in reviewing a decision on a motion to disqualify counsel. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed. Cir. 1984).

before it and is led to the inescapable conclusion that the most serious sanctions of dismissal

of SCG's counterclaims and disqualification of Attorney Lasko and the Lasko firm are

warranted.  At each stage of litigation over the issue of Attorney Lasko's relationship with

SCG, SCG, Attorney Lasko and the Lasko firm have revealed only so much information as

they deemed necessary, even after the Court made clear that it expected full candor and

disclosure.  Specifically, the Court bases its decision on the following:

- SCG, Attorney Lasko and the Lasko firm delayed the progression of this lawsuit by refusing to provide proper discovery on SCG's ownership structure, which would have included information regarding Attorney Lasko's position as indirect owner and Secretary of SCG.

- SCG, Attorney Lasko and the Lasko firm continued in their refusal to provide discovery into the relationship between Attorney Lasko and SCG even after plaintiffs put them on notice that such information was relevant to whether or not the Stipulated Protective Order had been violated and plaintiffs' confidential information had been mishandled.

- SCG, Attorney Lasko and the Lasko firm affirmatively misled plaintiffs - and, more importantly, this Court - as to Attorney Lasko's relationship with SCG.  They accomplished these misrepresentations by material omissions.  The misleading statements include:

    - Attorney Vozar's statement at the September 2007 status conference that Attorney Lasko was an 8% shareholder in SCG.

    - Attorney Lasko's silence during the September 2007 status conference at which Attorney Vozar revealed the 8% ownership interest.

    - Attorney Lasko's affidavit stating only that he was not an employee of SCG.

    - Mr. Franks' affidavit stating that Attorney Lasko was neither an employee nor a shareholder of SCG.  Mr.

12

> Franks also stated that Attorney Lasko's company, Vale Investments, had no right to participate in or vote on decisions by the members of SCG. Attorney Vozar made these same misleading statements in his October 2007 letter to the Court.

- • SCG, Attorney Lasko and the Lasko firm also failed to disclose that two employees of the Lasko firm own the 20% of Vale Investments not owned by Attorney Lasko. Even now, they have refused to fully reveal information that would permit plaintiffs and the Court to determine if Vale, the entity that owns membership shares of SCG, is merely the alter ego of Attorney Lasko.

- • Finally, SCG, Attorney Lasko and the Lasko firm failed to disclose that Attorney Lasko is the Secretary of SCG and that SCG is located at the same business address as the Lasko firm.

When considering all of the evidence, the Court concludes that SCG, Attorney Lasko and the Lasko firm have acted in bad faith. The Court also finds that SCG, Attorney Lasko and the Lasko firm acted in violation of its October 24 Order regarding the third party subpoenas. The Court does not find that the SPO was violated. The Court agrees that Attorney Lasko is not an "employee" of SCG. But, the pattern of conduct exhibited by Attorney Lasko and his client in their refusal to be forthcoming about a matter that potentially infringed upon plaintiffs' trade secret rights and their contumacious conduct exhibited since this issue was raised before the Court in September 2007 has resulted in prejudice to plaintiffs. Attorney Lasko and the Lasko firm have also breached their duty of candor to the Court by these actions. Such conduct is not taken lightly.

The Court, pursuant to its inherent powers, therefore grants the plaintiffs' motion to dismiss SCG's counterclaims with prejudice. The Court also grants plaintiffs' motion for disqualification of Attorney Lasko and the Lasko firm from acting further in this matter. While dismissal of SCG's counterclaims is, admittedly, a harsh sanction - in fact, the Court

feels it is the most serious sanction it can grant - the dismissal is not unfair.  SCG is responsible for its attorneys' conduct as well as the misleading statements made by its President Paul Franks.  This is especially true given the close relationship of SCG and Mr. Franks with Attorney Lasko and the Lasko firm.  The Court also finds that the motion to disqualify was not made for the purpose of harassment.  While SCG's choice of counsel is given much weight, the Court cannot and will not permit Attorney Lasko to continue in this matter given his conduct detailed above.[10]

The Court does not make these decisions lightly.  The Court cannot say how it would have ruled if all of the information now revealed had been disclosed when plaintiffs initially sought this information.  If SCG and Attorney Lasko had admitted their relationship and confronted the issue when the Stipulated Protective Order was being negotiated, that may have been enough.  But, they did not do so.  The Court is, thus, left to evaluate the record as it stands.  And, on the record before it, the Court is compelled to dismiss SCG's counterclaims and disqualify Attorney Lasko and the Lasko firm from this matter.  SCG's and Attorney Lasko's conduct thus far leaves too great a risk that further violations of this Court's orders will occur.[11]  In light of these sanctions, the Court declines to issue the further sanctions of

---

[10]

> Even though Attorney Lindon was present at the September 2007 status conference and remained silent during the discussion of Attorney Lasko's interest in SCG, the Court will give Attorney Lindon the benefit of the doubt and will assume that he did not know the full extent of the misrepresentations made by Attorneys Lasko and Vozar. The disqualification sanction does not extend to Attorney Lindon.

[11]

> The Court notes that the facts of *Grace v. Center for Auto Safety*, 72 F.3d 1236 (6th Cir. 1996), relied upon by SCG, are distinguishable

14

attorneys' fees and default judgment.

In light of the foregoing, the Court feels it is also appropriate to modify the SPO. A First Amendment to the Stipulated Protective Order is entered simultaneously with the instant Order. It provides that the definition of "outside counsel" be modified to preclude disclosure of all information designated as "attorneys' eyes only" to any Officer or Member of SCG. The Court makes explicit that Attorney Lasko may not circumvent this ruling by giving up his post as Secretary of SCG. The Court further orders that all information already produced and designated by plaintiffs as "attorneys' eyes only" that is in possession or control of Attorney Lasko or the Lasko firm must be returned to plaintiffs or delivered to the Lindon & Lindon firm within two business days of entry of this Order. Within four business days of entry of this Order, Attorney Lasko shall personally certify to the Court that all of plaintiffs' "attorneys' eyes only" information has been so delivered.[12]

*Plaintiffs' Motion to Compel re: Patent Infringement and for Protective Order* (Doc. 130)

---

from those at issue here.

[12]

In the alternative, plaintiffs seek the disqualification of Attorney Lasko and his law firm under Rule 8.4(c) of the Ohio Rules of Professional Conduct. Rule 8.4(c) provides "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Because the Court has resolved the motion on the grounds stated above, the Court need not reach whether or not Attorney Lasko has violated the Ohio Rules of Professional Conduct.

The Court further finds that Rule 3.7 (lawyer as witness), also raised by plaintiffs, is inapplicable on the facts presented here. Plaintiffs argue that Attorney Lasko may offer testimony on a not-yet-asserted trade secret misappropriation claim. Plaintiffs have failed to establish that Attorney Lasko has any admissible evidence to offer on the claims presently asserted in this litigation.

Plaintiffs move to compel responses to its first set of document requests, numbers 3, 4, 6, 7, 8, 9, 18-34, and 51-53, and interrogatory number 12.  Plaintiffs' discovery requests seek information regarding defendant's counterclaims for declaratory judgments of non-infringement, invalidity and unenforceability.  All of the parties' briefing relates to the proper scope of discovery given the existence of defendant's counterclaims.  However, defendant's counterclaims have now been dismissed.  As a result, the motion to compel is moot.

*Defendant's Motion to Compel and for Attorneys' Fees and Costs* (Doc. 83)

Defendant moves to compel full and complete responses to its First Set of Discovery Requests, served December 22, 2006.  Defendant also seeks attorneys' fees and costs.

The first area of dispute is whether plaintiffs have a duty to provide discovery relating to the '689 Patent.  Plaintiffs have dismissed their claim of infringement of the '689 Patent, and defendant's counterclaims relating to the '689 Patent have also been dismissed.  Therefore, the Court will not order discovery from plaintiffs on this topic.

The second area of dispute is whether plaintiffs have adequately responded to discovery requests seeking the facts underlying plaintiffs' infringement allegations.  This information is sought via Interrogatory Nos. 8 and 9.  The Court has reviewed plaintiffs' responses and finds them satisfactory.  Notably, the discovery requests at issue are interrogatories, not document requests.  While a party may choose to respond to an interrogatory by way of producing or identifying responsive document, Fed. R. Civ. P. 33(d), such a response is not compelled by the rules.  The Court declines to compel further responses to these interrogatories.

The third area of dispute is whether plaintiffs are required to disclose the facts

discovered during their pre-lawsuit investigation into whether defendant infringes the '689 and '752 Patents.  Plaintiffs argue that such facts are protected by the work product doctrine. It is defendant's burden to show substantial need.  Fed. R. Civ. P. 26(b)(3).  Defendant has failed to do so.  Plaintiffs are free to withhold this data with the limitation, of course, that they are precluded from using it to support their own claims.[13]  Defendant cannot establish a substantial need for the data, as defendant is free to test its own product to establish it does not infringe.  The Court declines to compel plaintiffs to disclose the documents identified in that portion of plaintiffs' privilege log that was produced to the Court as Exhibit B to defendant's motion.[14]

The fourth and final area of dispute is whether plaintiffs have a duty to provide discovery on defendant's deceptive trade practices counterclaim.  Because this counterclaim has been dismissed, this discovery request is moot.

Defendant's motion to compel and for fees and costs is denied.

*Plaintiffs' Motion for a Protective Order re: Third Party Subpoenas* (Doc. 126)

In an effort to support its counterclaims, defendant issued 41 subpoenas *duces tecum* to third parties in October 2007.  Plaintiffs move for a protective order instructing defendant to withdraw the subpoenas or, in the alternative, modifying the scope of the subpoenas and

---

[13]

> Defendant's complaints as to the sufficiency of the evidence are best addressed in a substantive motion on the merits.

[14]

> The Court also declines to order a more specific privilege log.  The information sought by defendant is not required by Rule 26(b)(5).

17

the time for production.[15]  The Court has dismissed defendant's counterclaims.  For this

reason, plaintiffs' motion for a protective order regarding SCG's bulk issuance of third party

subpoenas is granted.  The 41 third party subpoenas issued by SCG since October 15 are

hereby quashed.

*Plaintiffs' Motion to Compel Responses to Document Requests* (Doc. 137)

Plaintiffs seek to compel responses to its document requests numbered 97-103.[16]  The

document requests seek documents relating to: SCG Board of Directors' meetings concerning

FieldTurf, the patents in suit, SCG's counterclaims, and the manufacturer of the synthetic turf

sold by SCG (Request # 97); SCG's insurance policies (Request #98); SCG's bank account

statements and tax statements (Requests #99-100); and SCG organizational charts (Requests

#101-103).

Defendant argues that it "believes that the information and documents it provided

during [Attorney Lasko's] deposition satisfy FieldTurf's motion to compel as it related to

Requests for Production ... 97 and 101 through 103."  FieldTurf challenges this assertion,

stating that no documents were produced responsive to requests #101-103 and to five of the

---

15

> As an initial response to plaintiffs' motion for a protective order, the
> Court issued an Order with an aim to address these subpoenas in an
> orderly fashion. (Doc. 131)  The Court ordered defendant to instruct
> the subpoenaed parties to refrain from producing any documents
> requested by the subpoenas until an order issues from this Court
> directing otherwise so that the Court would have the opportunity to
> evaluate plaintiffs' arguments on the merits before the many third
> parties began producing information.

16

> The initial motion sought to also compel responses to requests
> numbered 93-96.  Defendant has since provided all documents
> responsive to these requests.

18

six sub-parts to request #97.  To the extent requests #97, 101, 102 and 103 seek information relating to plaintiff's surviving patent infringement claim and SCG's defenses thereto, the Court compels complete responses.

With respect to request #98, defendant asserts that it has fully complied in that it has no responsive documents.  Therefore, the Court will not compel any further response.  However, the Court notes that defendant should have informed plaintiff of its lack of responsive documents rather than to merely assert an objection on the grounds that the request was vague, ambiguous, and irrelevant and not calculated to lead to the discovery of admissible evidence.

As to requests # 99 and 100, the Court agrees with defendant that these requests are overly broad and potentially harassing and abusive.  Plaintiff need not gain access to all documents that relate to all tax filings and all documents that relate to quarterly bank statements to assess the financial health of defendant.  In any event, the Court orders that discovery on this topic be deferred until after a determination of infringement on the merits.

Plaintiff's motion to compel is granted in part and denied in part.  The Court declines to award fees and costs.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for default or for disqualification is GRANTED in PART and DENIED in PART.  Plaintiffs' motion for leave to file a sur-surreply is GRANTED.  Defendant's motion for a protective order regarding the deposition of Attorney Lasko is MOOT.  Plaintiffs' motion to compel patent infringement discovery and for a protective order is MOOT.  Defendant's motion to compel discovery and for attorneys' fees

19

and costs is DENIED.  Plaintiffs' motion for a protective order regarding third party

subpoenas is GRANTED.  Finally, plaintiffs' motion to compel responses to document

requests is GRANTED in PART and DENIED in PART.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 12/12/07